430 So.2d 563 (1983)
The STATE of Florida, Appellant,
v.
Patrick MILWOOD, Appellee.
No. 82-1144.
District Court of Appeal of Florida, Third District.
May 3, 1983.
Jim Smith, Atty. Gen., and Diane Leeds, Asst. Atty. Gen., for appellant.
Albert P. Rosillo and David I. Schlosberg, Miami, for appellee.
Before HENDRY, BARKDULL and BASKIN, JJ.
HENDRY, Judge.
The State appeals from an order granting the defendant's motion to suppress evidence and a post-arrest statement.[1] The issue presented is whether the trial court properly suppressed evidence obtained in an airport search of the defendant's carry-on baggage.[2] *564 We conclude that suppression was improperly granted under the facts of this case, and reverse.
At the hearing on the motion to suppress, the State put on testimony of the two police officers involved in the encounter with the defendant. The defendant did not testify. The officers testified the decision to contact the defendant was based on the observations that he had exited from a vehicle outside the airport without having any parting words with the driver, and had looked around nervously at the people on the sidewalk. Based on these "unusual" actions, the two, plain-clothed officers approached the defendant in the airport concourse. One officer said, "Excuse me, sir, police officer, may I talk with you a moment?" The defendant answered yes. When asked whether he had any identification, the defendant stated he did not. He did produce his airline ticket, upon request, and the officers noted it bore the name "A. Miller." Upon further inquiry whether he might not have some identification, the defendant began to look through his wallet and, after one officer pointed out what appeared to be some identification, the defendant produced same. The name "Patrick Milwood" was on the identification. When asked about the discrepancy between the names, the defendant replied the airline had "probably made a mistake." The defendant's ticket and identification were returned to him. One of the policemen then told the defendant that he was a narcotics officer and asked, in a "conversational" tone, if he could search the defendant's bag, stating that defendant did not have to consent to the search, "it was entirely up to him." The defendant responded, "Yeah, go ahead." Inside the bag marijuana was found and the defendant was arrested and charged with manufacture of and possession with intent to sell or manufacture or deliver cannabis.
Later, at the police station, after the defendant had been given Miranda warnings and said he did not wish to answer any questions without an attorney present, he was asked to, and did, sign a form stating he had previously given his voluntary consent to the search. This consent form was apparently obtained in violation of the defendant's fifth amendment rights. The trial court so found in its suppression order. While we in no way wish to condone the actions of the police in securing such consent under these circumstances, this issue is moot since we here conclude that the defendant had earlier voluntarily consented to the search.
After hearing testimony as to these matters, and argument of counsel, the trial court granted the defendant's motion to suppress. The court found, in its suppression order, inter alia, "that the officers had possession of the defendant's ticket and identification when they asked defendant if his carry-on luggage could be searched," which indicated, in conjunction with the preceding events, that the defendant had been illegally detained, "therefore vitiating the defendant's consent to search his bag."
The State contends on appeal that the defendant was not unlawfully detained or "stopped" by the police prior to his giving consent to search his bag, relying upon Cavalluzzi v. State, 409 So.2d 1108 (Fla. 3d DCA 1982). We agree that the initial holding of Cavalluzzi is controlling here:
We hold that (1) no stop (that is, temporary seizure) of Cavalluzzi occurred when the police officers approached him, identified themselves, asked if he would talk to them, and asked to see his airline ticket, State v. Login, 394 So.2d 183 (Fla. 3d DCA 1981); State v. Grant, 392 So.2d 1362 (Fla. 4th DCA 1981); United States v. Fry, 622 F.2d 1218 (5th Cir.1980); see also Schlanger v. State, 397 So.2d 1028 (Fla. 3d DCA 1981)... .
Id. at 1109. More recently, in Sands v. State, 414 So.2d 611, 617 (Fla. 3d DCA *565 1982), wherein this court upheld an airport search as incident to a valid arrest, we similarly concluded that the defendant's liberty was not restrained on account of his having given his plane ticket and driver's license to the police officers, where these items were returned to him. Accord State v. Login, 394 So.2d 183 (Fla. 3d DCA 1981); Royer v. State, 389 So.2d 1007, 1026 (Fla. 3d DCA 1980) (en banc) (Barkdull, J., concurring specially), pet. for review denied, 397 So.2d 779 (Fla. 1981), aff'd ___ U.S. ___, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
The appellee relies on this court's opinion in State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979), in support of his argument that he was unlawfully stopped, thereby vitiating his subsequent consent to search. In Frost, an airport stop and search case, we held that when the police officers retained the defendant's driver's license and airline ticket, he was "seized" for fourth amendment purposes under the test set forth in United States v. Wylie, 569 F.2d 62 (D.C. Cir.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978), i.e., whether a reasonable, innocent person in the defendant's shoes would have thought he was not free to leave. We further held in Frost that since the defendant was asked for and gave his consent to the search while the officers retained possession of his ticket and license, his consent could not serve to validate the otherwise unreasonable search because he was "restrained" when he gave his consent. In the instant case, the record testimony of the two police officers establishes without question that the defendant gave his consent to search after his ticket and identification had been returned to him. Because this factor critical to our conclusion in Frost (that the defendant was restrained when he gave his consent) is not present here, we decline to apply the holding of Frost in the case at bar.
Moreover, an additional and independent basis exists for our decision that suppression was improperly granted in this case. This court has previously determined in the context of several airport search cases that a search is lawful where the defendant freely and voluntarily consents to the search after being advised of his right to refuse permission. Jones v. State, 412 So.2d 38 (Fla. 3d DCA 1982); State v. Henry, 390 So.2d 92 (Fla. 3d DCA 1980); Husted v. State, 370 So.2d 853 (Fla. 3d DCA 1979) (trier of fact may find such warning breaks connection with any prior illegal police activity so as to render subsequent consent un-tainted, uncoerced and truly voluntary in character). Accord State v. Champion, 383 So.2d 984 (Fla. 4th DCA 1980). See United States v. Mendenhall, 446 U.S. 544, 558-59, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497, 512 (1980).
The record in the case before us clearly establishes that the defendant's airline ticket and identification were returned to him prior to his giving consent to the search and that, additionally, the defendant was advised of his right to refuse consent. Because the trial court's finding that the search was unlawful is without evidentiary support in the record, we conclude that the trial judge applied an erroneous rule of law, and we must reverse.
Reversed and remanded.
NOTES
[1] This appeal is authorized by art. V, § 4(b)(1), Fla. Const., and Fla.R.App.P. 9.140(c)(1)(B).
[2] Appellant has not raised as an issue for review whether the trial court properly suppressed the defendant's post-arrest "statement," a form which he signed at the request of the police officers, indicating he had previously given his consent to the search that had taken place.