464 So.2d 197 (1985)
The STATE of Florida, Appellant,
v.
Luis Javier SANTAMARIA, Appellee.
No. 84-621.
District Court of Appeal of Florida, Third District.
February 12, 1985.
Rehearing Denied March 19, 1985.
*198 Jim Smith, Atty. Gen., and Renee E. Ruska, Asst. Atty. Gen., for appellant.
Juan Ramirez, Jr., Coral Gables, for appellee.
Before BARKDULL, HENDRY and BASKIN, JJ.
HENDRY, Judge.
The defendant was charged with trafficking in cocaine in violation of section 893.135, Florida Statutes (1983). The trial court granted defendant's motion to suppress the cocaine the possession of which gave rise to the trafficking charge. It is from this order that the State appeals.
The trial court made detailed findings which appear in the order appealed, as follows:
It is undisputed that LUIS SANTAMARIA drove in an automobile with his family to the Amtrack train station in Miami. He walked into the station with his family, carrying two pieces of luggage with shoulder straps. He approached the ticket counter and requested his train ticket to Chicago, for which a reservation had been made in his own name. The clerk had difficulty understanding Santamaria, due to his heavy accent. Santamaria wrote his name on a slip of paper and gave it to the clerk. The clerk then found his reservation and gave Santamaria a ticket in his own name, for which Santamaria paid approximately $190.00. Santamaria sat down in the train station with his family. The two undercover police officers felt that Santamaria looked at them whenever they passed by the seating area. When an announcement was made over the public address system concerning a train to Chicago, Santamaria walked toward the ticket clerk asking if that was his train. The clerk pointed in the direction of the corridor in which to board the train. Santamaria went to the line for boarding of the train, when he again observed the officers standing next to the conductor taking tickets. Santamaria exited that area and returned to his family, engaging in conversation. He then reentered the boarding line and gave his ticket to the conductor. He began walking toward the train when he was approached by two officers, with a third officer standing nearby. Up to this point, it is undisputed that the only reason the officers stopped Santamaria was because of his looking at the officers on several occasions, his nervousness, and his runny nose, which the officer believed to be from cocaine use.
At this point, the version of facts between the two police officers and the Defendant are quite different.

*199 The officers state that they approached the Defendant to ask him some questions. At that point, one officer noticed the runny nose of Santamaria which he believed to be from cocaine use. During this stop the officers requested his identification, and Santamaria indicated he had forgotten it at home. The officers then asked Santamaria whether they could look in his suitcases, advising him that he did not have to consent; the accused consented to their search. Although one of the officers spoke Spanish, and had heard Santamaria speaking Spanish in the lobby, the officer testified that Santamaria was given the option of being questioned in English or Spanish and stated he could understand English. Thus, the questioning was done in English. A search of the second suitcase revealed a controlled substance. The officers first indicated the Defendant was given his Miranda rights in English, but on cross-examination stated these rights might have been read in Spanish. Although a Miranda rights card in English was introduced into evidence, Officer Muchado admitted that he also possesses a similar card in Spanish, and could have used it to advise the Defendant of his rights after his arrest. Prior to requesting consent, the officers requested permission to see Defendant's ticket, the ticket was given to the officers, and the ticket was returned to the Defendant.
The Defendant testified that he was approached by three police officers who flashed their badges. After being questioned for seven or eight minutes and being detained by these officers without the ability to leave, the officers stated, "We need to look in the bags". At that point, Santamaria silently dropped his bags to the ground, being frightened and considerably shaken. Santamaria further testified that no permission was given to search his bags. He also stated the questions were asked of him in English and significantly, the Miranda rights were given to him in Spanish. His proficiency in English is tenuous at best. He further testified that the officers failed to advise him that he did not have to talk with them, and that he could refuse their search of his luggage.
Having had an opportunity to evaluate the demeanor of the witnesses, their candor or lack of it, their manner in answering the questions of counsel, their ability to recall, and the numerous conflicts between the testimony given in court and that contained in the depositions, as well as their credibility, the Court finds that the only believable evidence is that:
1. There was no probable cause to detain or arrest the Defendant.
2. The Defendant was detained illegally, he was not told he was free to leave the presence of the police officers, and in fact, could not have done so.
3. The Defendant was under the belief, as any reasonable citizen would have been under these same or similar circumstances, that he had to submit to a search, and that he was confined to the immediate area.
4. The Defendant under all of these circumstances was scared, visibly shaken, and merely submitted to the authority of the presence and power of the police officers, when he dropped his luggage to the ground.
5. The police officers chose to avoid doing the following, all of which were readily available to them:
(a) Offering the Defendant a written Waiver of rights form to sign, which explains the rights the Defendant is giving up.
(b) Using a trained narcotics dog which was present at the Amtrack station, to sniff the luggage in question, which could have been done quickly and in an unintrusive manner.
(c) They failed to place his name in the NCIC computer.
(d) They failed to advise the Defendant of his Miranda rights prior to this search.

*200 (e) The officers failed to question the Defendant prior to this search using the Spanish language, which language they heard him speaking in the train station lobby and which language one of the two arresting officers spoke fluently.
(f) The police officers observed no violations of law before their search of the Defendant's shoulder-strap luggage.
6. The Defendant did not properly understand the questions given him in the English language, so that he could make an educated judgment as to whether he should submit to the search of his luggage. These questions should have been asked of him in Spanish.
At issue is whether the trial court erred in granting the defendant's motion to suppress the contraband seized pursuant to the search of the defendant's luggage.
Based upon the trial court's findings of fact and the controlling case law, we have concluded that no reversible error has been demonstrated. See Restrepo v. State, 438 So.2d 76 (Fla. 3d DCA 1983); Freeman v. State, 433 So.2d 9 (Fla. 2d DCA 1983); Rosell v. State, 433 So.2d 1260 (Fla. 1st DCA 1983), pet. for rev. denied, 446 So.2d 100 (Fla. 1984); McClain v. State, 408 So.2d 721 (Fla. 1st DCA), pet. for rev. dismissed, 415 So.2d 1361 (Fla. 1982); Login v. State, 394 So.2d 183, 188 (Fla. 3d DCA 1981); State v. Battleman, 374 So.2d 636 (Fla. 3d DCA 1979).[1]
Accordingly, we affirm the order appealed.
Affirmed.
NOTES
[1] This case is distinguishable from State v. Milwood, 430 So.2d 563 (Fla. 3d DCA 1983). In Milwood, we held that absent other coercive factors, the return of the defendant's airline ticket by the two questioning officers prior to requesting consent to search the defendant's luggage was crucial to our determination that the defendant was not "restrained" when he consented to the search request and, consequently, that his consent validated the search. In the instant case, additional factors were present: the length of the questioning (7 to 8 minutes), the presence of a third officer, the fact that the officers questioned the defendant in English despite the defendant's obvious difficulties with the English language, and the defendant's lack of any affirmative verbal response to the officer's request that they "needed to look in the bags." These additional factors support the trial court's determinations that the defendant was illegally detained and that the State failed to carry its burden to prove by clear and convincing evidence that any consent was freely and voluntarily given by the defendant. It should be emphasized, also, that the State bears an even heavier burden of proof on the voluntariness issue where the defendant is a foreigner or non-English speaking person. Restrepo v. State, 438 So.2d at 78.