535 So.2d 282 (1988)
The STATE of Florida, Appellant,
v.
Dorothy CROSS, Appellee.
No. 86-2589.
District Court of Appeal of Florida, Third District.
January 26, 1988.
On Rehearing December 27, 1988.
Robert A. Butterworth, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and N. Joseph Durant, Jr., Asst. Public Defender, for appellee.
Before HUBBART, FERGUSON and JORGENSON, JJ.
On Rehearing En Banc December 27, 1988.
FERGUSON, Judge.
The State appeals from an order granting a defendant's motion to suppress.
At approximately 8:00 A.M., on July 3, 1986, Detectives Fernandez and Facchiano of the Metro-Dade narcotics squad entered the Miami Amtrak Station. Detective Fernandez testified that he noticed the defendant, Dorothy Cross, "perk up" and watch him as he walked around the station. *283 Twenty minutes later a boarding call was announced. Cross presented her ticket to the conductor who called out her South Carolina destination. Detective Fernandez allegedly became suspicious of Cross because of the small amount of luggage she carried  a small suitcase and handbag. As Cross walked to the loading platform to board, the two officers stopped her, identified themselves as narcotics officers, and asked her to speak with them. Cross agreed. Detective Fernandez asked permission to search her suitcase, advising her that she did not have to consent if she did not want to. Cross responded, "No, it's OK." The officers looked through the suitcase and removed several items of women's clothing including a black slip. Unfolding the black slip, they found a hard, baseball-shaped object wrapped in brown tape.
At the suppression hearing, Detective Fernandez testified that when he found the ball he immediately placed Cross under arrest and took her to the police station, where cocaine was discovered inside the ball. Inconsistently, Detective Facchiano testified that upon finding the hard ball, Detective Fernandez took out a knife, cut into the ball, discovered cocaine, and then arrested Cross. In view of the conflicting testimony, the trial court suppressed the evidence on the basis of two alternative theories. First, assuming Officer Facchiano's recollection of events was correct, the action of the officer in cutting into the wrapped ball exceeded the scope of Cross's consent. Second, assuming Detective Fernandez's version was accurate, finding the wrapped ball did not constitute probable cause to arrest Cross. We agree.
The settled rule governing review of a trial court's decision on a motion to suppress is that the ruling "comes to this court with a presumption of correctness [and] ... a reviewing court should not substitute its judgment for that of a trial court, but, rather, should defer to the trial court's authority as a factfinder." Wasko v. State, 505 So.2d 1314, 1316 (Fla. 1987); DeConingh v. State, 433 So.2d 501 (Fla. 1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); Rodriquez v. State, 189 So.2d 656 (Fla. 3d DCA 1966), cert. denied, sub. nom. Suarez v. Florida, 389 U.S. 848, 88 S.Ct. 66, 19 L.Ed.2d 116 (1967). See also State v. Battleman, 374 So.2d 636 (Fla. 3d DCA 1979), and cases collected therein.
The trial judge saw the witnesses, heard all the testimony, and rejected the State's arguments, ruling that the search exceeded the scope of consent, that there was no probable cause to engage in the greater intrusion of cutting open the ball, and that there was no probable cause to arrest Cross upon finding the wrapped ball. Applying his common sense wisdom, the judge rejected the officer's characterization of the taped package as "suspicious," ruling:
An object which is hard, the size of a baseball and wrapped in tape is not an inherently suspect item. It is not any more suspect when it is found in a tote bag at a train station. Unless, of course, every object wrapped in tape is suspect. Without more it does not prove probable cause to arrest a person. There was nothing more in this case.
In recent months several cases have come before courts in this state chronicling the detention of travelers by narcotic interdiction officers and the seizure of "suspicious" items in their possession. These items have included: a gift-wrapped package, an oblong package, a soft or malleable package, a manila package, a tobacco pouch, a cosmetic bag, a medication container, and fruit.
There is no information in the record suggesting other common items included in the officers' list of containers which, per se, give rise to probable cause of illegal drug possession. There is no evidence indicating what percentage of the searches of these common items proves eventful so as to persuade us that this container search was not simply a fishing expedition. Based on no more than that the item was tape-wrapped, hard, and baseball-shaped, the officer concluded that he had probable cause for a destructive intrusion. The fourth *284 amendment requires more.[1]
The matter of consent became pivotal. What is included within the scope of a consent search is determined by the totality of the circumstances. Wells v. State, 492 So.2d 1375 (Fla. 5th DCA 1986). Significantly, no inquiry was made regarding the contents of the sealed package, nor was specific consent requested or given to search the object. We cannot agree that the appellant's consent to look into her bag was clear and unequivocal permission to unravel her undergarments in an open train terminal and remove and destroy a sealed container in order to reach its contents. A general consent to search an area does not automatically give a police officer the right to cut into or destroy any container located in the area. See generally State v. Fuksman, 468 So.2d 1067, 1070 (Fla. 3d DCA 1985) (refusing to "expand the consent exception by holding that a general and ill-defined consent to search a vehicle necessarily includes permission to search every package and container within the vehicle"); Hutchinson v. State, 505 So.2d 579 (Fla. 2d DCA 1987) (consent to look in purse was not consent to search small, unopened bags in purse), review granted, no. 70,526 (Fla. Sept. 25, 1987); Horvitz v. State, 433 So.2d 545 (Fla. 4th DCA 1983) (consent to look in briefcase did not constitute consent to smell gift-wrapped package found in briefcase). Compare Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985) (consent search upheld where officers were justified in opening distinctively wrapped, shaped, and sized packages that officers had probable cause to believe contained narcotics and defendant did not withdraw or limit consent when directly questioned about packages).
Assuming, without agreeing, that reasonable minds could disagree as to whether the search exceeded the scope of consent, the result ultimately turned on the credibility of the testimony and the trial court's own experience. In such cases we have said: "if a doubt exists as to whether the officer was reasonable in concluding that a search was justified, such a doubt must be resolved in favor of the defendant whose property was searched." Taylor v. State, 355 So.2d 180, 185 (Fla. 3d DCA) (quoting Miller v. State, 137 So.2d 21, 25 (Fla. 2d DCA 1962)), cert. denied, 361 So.2d 835 (Fla. 1962).
AFFIRMED.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON, and JORGENSON, JJ.
HUBBART, J., concurs.
JORGENSON, Judge, dissenting.
I respectfully dissent. I would reverse the trial court's order granting Cross's pretrial motion to suppress.
Cross correctly concedes that the initial encounter with the detectives was a mere police-citizen encounter which was not a seizure within the meaning of the fourth amendment. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983). During this police-citizen encounter, Cross agreed to speak to the detectives. Upon request, she produced identification in the name of Dorothy Cross and a train ticket in the name of Dorothy Edmond, her alleged maiden name. The detectives returned Cross's ticket and identification to her. Their actions did not amount to a seizure of Cross and did not convert the encounter into a "stop." State v. Milwood, 430 So.2d 563 (Fla. 3d DCA 1983).
The detectives requested permission to search the small coach bag Cross was carrying and told her that she could refuse. Cross did not refuse: she consented to the search. In the context of airport search cases, this court has held "that a search is lawful where the defendant freely and voluntarily consents to the search after being advised of his right to refuse permission." Id. at 565; Jones v. State, 412 So.2d 38 (Fla. 3d DCA 1982). This principle is no less applicable in the context of a train station search. Further, in determining the scope of a consent search, the court must consider the totality of the circumstances. *285 State v. Fuksman, 468 So.2d 1067 (Fla. 3d DCA 1985). In this case, Cross did not limit in any manner her consent to search; moreover, she knew that the object of the search was narcotics since Detective Fernandez had so advised her at the outset of their conversation. Considering the totality of the circumstances, her consent to search her bag included a consent to search possible containers of narcotics in her bag.[1]See Wells v. State, 492 So.2d 1375, 1378 n. 2 (Fla. 5th DCA 1986) (where officers identify themselves as narcotics agents and ask permission to search a suitcase, it could be concluded "that consent to search the suitcase included consent to search any container within the suitcase which might contain the announced object of the search").
The majority mistakenly affords significance to the conflict in the detectives' testimony at the suppression hearing regarding precisely when the taped object was cut open, disclosing the cocaine. The temporal discrepancy in their testimony is irrelevant to the issues of whether the search of Cross's bag and the seizure of the taped object were lawful. It matters not whether the taped object was opened immediately upon its discovery per Detective Facchiano's account, e.g., State v. Perez, 509 So.2d 1287 (Fla. 3d DCA 1987), or subsequently at the police station following Cross's arrest as Detective Fernandez testified, e.g., State v. Langer, 516 So.2d 310 (Fla. 3d DCA 1987), probable cause to open the taped object accrued at the moment of its discovery.
The significant aspect of the detectives' testimony at the suppression hearing concerns their statements that, in their more than twenty years' combined experience as narcotics detectives, they had seen cocaine packaged in a similar manner on many prior occasions. Indeed, Facchiano testified that he had seen cocaine packaged in this way on "hundreds of occasions." Once the detectives found the taped, baseball-shaped object, in light of their many years of experience in narcotics work, they had probable cause to believe that Cross was carrying contraband. See Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985); State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984); see also P.L.R. v. State, 455 So.2d 363 (Fla. 1984) (in determining whether object constitutes evidence of crime, court considers totality of circumstances, in light of the officer's training, education and experience), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985); State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978) (officer had probable cause to believe small, flat, tinfoil packets were narcotics since in his long experience he knew narcotics were customarily wrapped in that fashion). The detectives, therefore, had probable cause to arrest Cross and to seize the taped object. The revelation of cocaine through the further examination of the object was nothing more than a search incident to a valid arrest. See State v. Rodriguez, 477 So.2d 1025 (Fla. 3d DCA 1985).
Because the search and seizure were supported by probable cause, I would reverse the suppression order.

ON REHEARING EN BANC
JORGENSON, Judge.
Motion for rehearing en banc was granted to consider the possible conflict between the panel decision and the prior decision of this court in Palmer v. State, 467 So.2d 1063 (Fla.3d DCA 1985). We conclude that the panel decision does conflict with Palmer and, therefore, we grant rehearing en banc.
The state appeals from an order granting Dorothy Cross's pretrial motion to *286 suppress. Cross correctly concedes that her initial encounter with detectives in the Miami Amtrak Station was a mere police-citizen encounter which was not a seizure within the meaning of the fourth amendment. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983). During this police-citizen encounter, Cross agreed to speak to the detectives. Upon request, she produced identification in the name of Dorothy Cross and a train ticket in the name of Dorothy Edmond, her alleged maiden name. The detectives returned Cross's ticket and identification to her. Their actions did not amount to a seizure of Cross and did not convert the encounter into a "stop." State v. Milwood, 430 So.2d 563 (Fla.3d DCA 1983).
The detectives requested permission to search the small coach bag Cross was carrying and told her that she could refuse. Cross did not refuse: she consented to the search. In the context of airport search cases, this court has held "that a search is lawful where the defendant freely and voluntarily consents to the search after being advised of his right to refuse permission." Id. at 565; Jones v. State, 412 So.2d 38 (Fla.3d DCA 1982). This principle is no less applicable in the context of a train station search. In the course of searching the small coach bag, the detectives discovered a hard, baseball-shaped object wrapped in brown tape.
The significant aspect of the detectives' testimony at the suppression hearing concerns their statements that, in their more than twenty years' combined experience as narcotics detectives, they had seen cocaine packaged in a similar manner on many prior occasions. Indeed, Facchiano testified that he had seen cocaine packaged in this way on "hundreds of occasions." Once the detectives found the taped, baseball-shaped object, in light of their many years of experience in narcotics work, they had probable cause to believe that Cross was carrying contraband. See Palmer v. State, 467 So.2d 1063 (Fla.3d DCA 1985); State v. Ellison, 455 So.2d 424 (Fla.2d DCA 1984); see also P.L.R. v. State, 455 So.2d 363 (Fla. 1984) (in determining whether object constitutes evidence of crime, court considers totality of circumstances, in light of the officer's training, education and experience), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985); State v. Redding, 362 So.2d 170 (Fla.2d DCA 1978) (officer had probable cause to believe small, flat, tinfoil packets were narcotics since in his long experience he knew narcotics were customarily wrapped in that fashion). The detectives, therefore, had probable cause to arrest Cross and to seize the taped object. The revelation of cocaine through the further examination of the object was nothing more than a search incident to a valid arrest. See State v. Rodriguez, 477 So.2d 1025 (Fla.3d DCA 1985).
The suppression order is reversed, and the cause is remanded for further proceedings.
SCHWARTZ, C.J., BARKDULL, NESBITT and DANIEL S. PEARSON, JJ., concur.
FERGUSON, Judge (dissenting from en banc opinion).
Judge Jorgenson's dissenting opinion, now adopted by the en banc majority opinion, holds that consent to search a container is consent to search and destroy a container-within-the-container, and thus extends consent searches to new and unlimited realms.[1]Palmer v. State, 467 So.2d 1063 (Fla.3d DCA 1985), on which the en banc majority relied for conflict jurisdiction, was fully distinguished by the majority in the original decision of the three-judge panel.
In Palmer this court affirmed the trial court's denial of Palmer's motion to suppress on two grounds: 1) the trial court *287 found that the officers were justified in their belief that the malleable and distinctively wrapped, shaped, and sized packages constituted probable cause to believe that narcotics were present, and 2) the consent to search the tote bag extended to the packages "particularly in light of the fact that, unlike, for example, Goldberg v. State, 407 So.2d 352 (Fla. 4th DCA 1981) and Major v. State, 389 So.2d 1203 (Fla.3d DCA 1980), rev. denied, 408 So.2d 1095 (Fla. 1981), Palmer did not restrict, withdraw or limit his consent in any way, even when directly questioned about the packages' contents." Palmer, 467 So.2d at 1064.
Here, the trial court made a specific finding that, all the circumstances considered, the baseball-shaped, tape-wrapped package did not, without more, constitute probable cause for a search. It is settled law that the trial court's ruling on a motion to suppress is binding if the record contains evidence to support the finding. E.g., State v. Battleman, 374 So.2d 636 (Fla.3d DCA 1979). There was substantial and competent evidence to support the court's finding.
A rule governing probable cause to search opaque containers which could hold either innocent or illegal contents was set forth recently by the Florida supreme court. In Caplan v. State, 531 So.2d 88 (Fla. 1988), the court held that "the mere observation of an opaque container, without more, cannot constitute probable cause. There must be at least an additional objective and reasonably specific element justifying the state agent's inference of wrongdoing." Caplan, 531 So.2d at 92.
The opaque container in Caplan was a hand-rolled cigarette, which in common experience, is more likely to contain contraband than is a ball-shaped and taped package. Holding that the hand-rolled cigarette must be suppressed, the court wrote that even if the officer possessed the expertise to recognize illegal narcotics, "the mere observance of an opaque container commonly used to transport contraband does not, without more, give rise to probable cause to search." Caplan, 531 So.2d at 92. Here, when the officers stopped Mrs. Cross, opened her luggage, and rummaged through her undergarments in public view, there was no evidence of the "something more" justifying an inference of wrongdoing required for probable cause to search a container other than the outer one for which consent was given.
Palmer is distinguishable for another reason. The Palmer court thought it significant that the defendant was directly questioned about the contents of the containers found in his suitcase. In contrast, Cross was given no chance to explain, limit, or withdraw her consent before the officer stuck a knife into the container to reach the contents  a significantly different destructive intrusion. After the police questioned Palmer about the contents of his packages, they apparently simply "opened the packages and found cocaine." Palmer, 467 So.2d at 1064.
It is unreasonable to assume that Cross's initial permission to search her suitcase carried with it consent for officers to destroy personal property found within the container. "Even within [the limits of a general and unqualified consent to search] the police do not have carte blanche to do whatever they please. Certainly they may not engage in search activity which involves the destruction of property... ." W. LaFave, Search and Seizure § 8.1(c) (1987). See also Luxenburg v. State, 384 So.2d 742 (Fla.1st DCA 1980) (consent to search box was not permission for state agent to take a knife and slit open black plastic bag located inside box).
While claiming to rely on Palmer the majority is actually enlarging Palmer, which specifically rejected the broad conclusion in State v. Wargin, 418 So.2d 1261 (Fla.4th DCA 1982) that "consent to search luggage includes the authority to search closed containers within the luggage which may conceal the object of the search." Palmer, 467 So.2d at 1064, n. 1.
Our holding also conflicts with a recent opinion of the fourth district, State v. Kerwick, 512 So.2d 347 (Fla.4th DCA 1987), which rejected, with condemning language, the argument that consent to search a *288 large suitcase extended to permit a destructive intrusion into a "smaller bag therein." Kerwick, 512 So.2d at 348. Even if consent had been given, and Cross had not seized the opportunity to limit the search to the outer container, the original consent would not authorize the type of search conducted in this case.
Judge Robert Andrew's vivid language in State v. Kerwick, paraphrased here, is a fitting conclusion to this dissent. "The founders of the Republic would be thunderstruck ..." at the spectre of traveling American citizens being stopped without probable cause by "badge-wielding police" and asked for identification and consent to search luggage, "all in the name of `voluntary cooperation'." Kerwick, 512 So.2d at 348-349. Conceding, however, that the fourth amendment has already been compromised to that extent  as the judiciary's contribution to the desperate war on drugs  the further extension of a consent search to include permission for a physical violation and destruction of personal property found in the luggage, "is foreign to any fair reading of the Constitution." Kerwick, 512 So.2d at 348.
Before today the en banc majority holding was without precedent in the case law. The trial judge's ruling should be affirmed.
HUBBART and BASKIN, JJ., concur.
NOTES
[1] Of course, the fourth amendment's prohibitions are not averted by the fact that the police officers subsequently found illegal drugs. See Collins v. State, 65 So.2d 61 (Fla. 1953); State v. Rodriquez, 515 So.2d 330 (Fla. 3d DCA 1987).
[1] The trial court's reliance on State v. Fuksman, 468 So.2d 1067 (Fla. 3d DCA 1985), is misplaced. In that case, the police were looking for illegally obtained airline tickets. They requested permission from the defendant to search his car, without informing him of the object of their search. They then searched his locked briefcase which was inside the car. This court concluded that, under those particular circumstances, the scope of Fuksman's consent to search his car did not include his consent to search his locked briefcase.
[1] Consent is virtually abandoned as a basis for upholding the inner-container search under the revised majority opinion  perhaps in anticipation of the supreme court's decision in State v. Wells, 13 F.L.W. 686 (Fla. Dec. 2, 1988), which rejects the notion that consent to examine an outer container is consent to break into a sealed container therein.

Nevertheless, the majority's alternative theory  probable cause  is, similarly, of dubious vitality in light of the also-recent Caplan v. State decision, discussed later in this dissent.