560 So.2d 228 (1990)
Dorothy CROSS, Petitioner,
v.
STATE of Florida, Respondent.
No. 73637.
Supreme Court of Florida.
April 12, 1990.
*229 Bennett H. Brummer, Public Defender, and N. Joseph Durant, Jr., Asst. Public Defender, Miami, for petitioner.
Robert A. Butterworth, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., Miami, for respondent.
GRIMES, Justice.
We review State v. Cross, 535 So.2d 282 (Fla. 3d DCA 1988), because of apparent conflict with Caplan v. State, 531 So.2d 88 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1577, 103 L.Ed.2d 942 (1989). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Dorothy Cross was charged with possession of cocaine. Following a hearing, the trial judge concluded that the police had conducted an unreasonable search and seizure and granted Cross's motion to suppress. A panel of the Third District Court of Appeal affirmed the suppression order in a split decision. Thereafter, the court sitting en banc adopted the dissenting position of Judge Jorgenson and reversed.
At the suppression hearing, Detective Fernandez testified that he and two other detectives entered the Miami Amtrak station about 8:15 a.m. on July 3, 1986. His attention was drawn to Cross, who was seated in the waiting area, because she seemed to take immediate notice of his arrival and monitored his whereabouts. When the boarding call for a northbound train was announced a few minutes later, Detective Fernandez stood by the train personnel who were collecting tickets. He observed Cross handing her ticket to the conductor and heard him state that she was going to South Carolina. Fernandez was surprised that a woman travelling such a distance would not be carrying more than a small tote bag and a pocket book.
Fernandez, who was then joined by Detective Facchiano, approached Cross as she was walking down the platform toward her train. Fernandez asked if he might speak with her, and she answered in the affirmative. Upon his request to see her ticket and some identification, she provided an Amtrak ticket with the name of Edmond and a Florida driver's license with the name of Cross. She explained that Edmond was her maiden name. After returning the items, Fernandez advised Cross that the police had encountered problems with narcotics being taken to other parts of the country through the train system and asked if she would give him permission to search her tote bag. He advised her that she did not have to consent to the search, but she agreed that it would be all right. As he searched the contents of the bag, Fernandez found a hard baseball-shaped object wrapped in brown tape located inside a woman's black slip. Fernandez, who was an experienced narcotics officer, testified that he had seen cocaine packaged in that manner many times before. As a consequence, he placed Cross under arrest. He said that the contents of the package were later field tested and found to contain cocaine. Detective Facchiano essentially corroborated Fernandez's testimony except *230 that he testified that after finding the package Fernandez cut off a piece of it and that when white powder emerged, Cross was placed under arrest.
At the outset, it is clear that the detectives' initial contact with Cross was a police-citizen encounter rather than a seizure within the meaning of the fourth amendment. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). When the detectives requested permission to search Cross's bag, she was told that she could refuse. Once she consented, the detectives had a right to search the bag, although this consent did not extend to cutting into or breaking open sealed containers located therein. See State v. Wells, 539 So.2d 464 (Fla.), cert. granted, ___ U.S. ___, 109 S.Ct. 3183, 105 L.Ed.2d 692 (1989). The pivotal issue in the case is whether the detectives had a right to arrest Cross when they discovered the round-shaped, taped object in her belongings. The trial judge concluded that they had no probable cause to make the arrest. In reaching the opposite conclusion, the district court of appeal stated:
The significant aspect of the detectives' testimony at the suppression hearing concerns their statements that, in their more than twenty years' combined experience as narcotics detectives, they had seen cocaine packaged in a similar manner on many prior occasions. Indeed, Facchiano testified that he had seen cocaine packaged in this way on "hundreds of occasions." Once the detectives found the taped, baseball-shaped object, in light of their many years of experience in narcotics work, they had probable cause to believe that Cross was carrying contraband. See Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985); State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984); see also P.L.R. v. State, 455 So.2d 363 (Fla. 1984) (in determining whether object constitutes evidence of crime, court considers totality of circumstances, in light of the officer's training, education and experience), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985); State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978) (officer had probable cause to believe small, flat, tinfoil packets were narcotics since in his long experience he knew narcotics were customarily wrapped in that fashion). The detectives, therefore, had probable cause to arrest Cross and to seize the taped object. The revelation of cocaine through the further examination of the object was nothing more than a search incident to a valid arrest. See State v. Rodriguez, 477 So.2d 1025 (Fla. 3d DCA 1985).
Cross, 535 So.2d at 286. We agree with this analysis.
In reaching our conclusion, we are not reversing the finding of the trial judge on a disputed issue of fact. The judge's suppression order makes it clear that he accepted the detectives' testimony at face value and simply concluded as a matter of law that the undisputed facts did not give the detectives probable cause. The factual discrepancy in the detectives' testimony with respect to whether the package was opened before or after Cross's arrest was legally irrelevant. As explained by Judge Jorgenson in his original dissenting opinion:
It matters not whether the taped object was opened immediately upon its discovery per Detective Facchiano's account, e.g., State v. Perez, 509 So.2d 1287 (Fla. 3d DCA 1987), or subsequently at the police station following Cross's arrest as Detective Fernandez testified, e.g., State v. Langer, 516 So.2d 310 (Fla. 3d DCA 1987), probable cause accrued at the moment of its discovery.
Id. at 285 (Jorgenson, J., dissenting).
Upon consideration, it is clear that this Court's decision in Caplan v. State does not dictate a contrary result. Caplan involved the detection by police officers of "`several small rolled burnt cigarette wrappings' on the floorboard" of a car. 531 So.2d at 90. The court held that the mere observation of opaque containers such as hand-rolled cigarettes, without something more, does not give rise to probable cause. Id. at 91.
*231 In explaining the "something more" which would sustain a finding of probable cause, we referred to P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985), in which this Court held that an experienced policeman's observation of a manila envelope, of a type usually used for marijuana transactions, in the pocket of a juvenile at a known drug-transaction site provided sufficient probable cause for an arrest. In the instant case, detectives having a combined law enforcement experience of over twenty years observed a container commonly used to hold cocaine at a site where narcotics are frequently transported. Under the totality of circumstances, these facts provided the "something more" needed to establish probable cause.
Finally, Cross's attempt to analogize hand-rolled cigarettes and tape-wrapped baseballs is not persuasive. Although it may be said that persons frequently smoke hand-rolled cigarettes, it cannot be said that people frequently carry tape-wrapped baseballs, even during the baseball season.
We approve of the opinion of the district court of appeal.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, dissenting.
I respectfully dissent for the reasons so well expressed by Judge Ferguson in his dissent from the majority opinion below.
KOGAN, J., concurs.