HARRIS, Judge,
dissenting.
I respectfully dissent.
The State appeals the suppression of evidence obtained as a result of a consensual search. The State contends that the trial judge based his suppression order on an erroneous conclusion of law. I agree and would reverse.
*246 Harmon’s Cove at the time of this incident was recognized as one of the worst drug areas in Orlando. It is a complex which rents rooms on a daily basis. In an effort to reduce transient drug sales, the owner of the complex authorized the Orlando Police Department to issue trespass warnings as his representative[1] to any non-resident found on the premises. On March 20, 1989, Officers Glidden and Hughes observed appellee enter Harmon’s Cove, stay approximately one minute and start his departure from the premises. Since the officers were aware that all of the residents of Harmon’s Cove, with the exception of one white woman, were black, they knew that appellee, a white male, was a non-resident. Pursuant to the authority given them by the owner, the officers stopped appellee while he was still on private property to issue the trespass warning.[2] They obtained appellee’s name and address and determined that indeed he was not a resident of Harmon’s Cove. They then requested that they be permitted to search appellee. Appellee consented to the search and two pieces of crack cocaine were found.
At a subsequent motion to suppress hearing, appellee contended that the consent was involuntary, not because of any coercion on the part of the officers involved in the search but because he was afraid to refuse.[3] Although his exact reason is unclear from the record, the trial court found the consent involuntary and suppressed the evidence. While the trial court’s order is clothed with a presumption of correctness[4] and will not be disturbed if there is any legal basis to sustain it,[5] nevertheless there must be some basis in the record to support the decision.
Since the believability of the witness is for the trial judge to determine, we must accept as true such facts as the trial court found to exist. The trial judge made no such record findings so we must determine what facts are justified by the record including the “facts” most favorable to the result. We find the relevant facts in the light most favorable to appellee to be:
1. Three police officers stopped the defendant and asked if he would voluntarily consent to a search.
2. Two stood in front of him and one behind him.[6]
3. He consented without hesitation.
4. He consented, not because he was unaware of his right to refuse (he had been previously arrested three times and was able to recite his rights verbatim into the record) but because he was afraid to refuse.
5. His fear was based on his “state of mind” that if he refused he would be beaten and arrested because at other times he had observed such conduct happen to others who refused to consent.
*247 It seems clear that appellee’s subjective state of mind is insufficient to negate consent. In Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the United States Supreme Court considered the effect of the defendant’s subjective state of mind on the voluntariness of a confession. In that case the defendant confessed because inner voices told him to do so. The Colorado Supreme Court held that because of his state of mind, his confession was involuntary. The United States Supreme Court rejected this contention finding that such a holding would expand their previous line of voluntariness cases into a far reaching requirement that courts must determine a defendant’s motivation for speaking or acting as he did even though there was no claim that governmental conduct coerced his decision. The court stated:
Only if we were to establish a brand new constitutional right — the right of a criminal defendant to confess to his crime only when totally rational and properly motivated — could respondent’s present claim be sustained.
* Jfc * * * *
Respondent would now have us require sweeping inquiries into the state of mind of a criminal defendant who has confessed, inquiries quite divorced from any coercion brought to bear on the defendant by the State.
* * * * * *
We hold that coercive police activity is a necessary predicate to the finding that a confession is not “voluntary” within the meaning of the Due Process Clause of the Fourteenth Amendment.
Again, appellee does not contend that the officers involved in the search coerced him — only that he had in the past seen other officers coerce other citizens and that this created fear in his mind which led to the consent. Clearly this does not show coercion directed at appellee; it at most shows a state of mind in which appellee either fears or is suspicious of police officers generally.
This does not make the consent involuntary and I would REVERSE.

. § 810.08(1) Fla.Stat.1989.

. Neither the authority of the police to serve as representatives of the owner under Section 810.-08(1) nor the legality of the stop itself is challenged in this appeal.

. His "fear" was based on what he says he observed when other people at other times refused to consent to search.

. Medina v. State, 466 So.2d 1046 (Fla.1985).

. Sommer v. State, 465 So.2d 1339 (Fla. 5th DCA 1985).

. Since he did not testify that the officers threatened him, touched him or in any way attempted to block or impede his departure, this seems insufficient to vitiate an otherwise voluntary consent. See Bostick v. State, 554 So.2d 1153 (Fla.1989) where the police partially blocked the only possible exit from the bus and one officer apparently had his hand on a gun. Further Bostick could not leave the bus because it was about to depart. No such facts were alleged in this case. There was no show of weapons, no touching, and no showing that appellee could not have walked away. See also, Cross v. State, 560 So.2d 228 (Fla.1990). In Cross a consent search was upheld in which two police officers stopped a woman in the Miami Amtrak Station. After being advised that she could refuse, she consented to the search and drugs were found wrapped in a hard, baseball shaped object wrapped in brown tape. Although the case went off on the issue of probable cause to arrest Cross when the package was found in order to justify the search of the "sealed container”, the court found that the initial contact between the police and Cross, even in the public terminal, was' a proper police-citizen encounter. In Cross the presence of two police officers did not make the consent involuntary.