# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-3679
Lower Tribunal No. 2023-CF-002489-O
_____

STATE OF FLORIDA,

Appellant,

v.

TRAVIS CORNELIUS SIMPSON,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Wayne C. Wooten, Judge.

May 30, 2025

PER CURIAM.

The State of Florida appeals the trial court's order granting Travis Cornelius Simpson's motion to suppress. We have jurisdiction. *See* Fla. R. App. P. 9.140(c)(1)(B). Law enforcement conducted a valid traffic stop on Simpson and then searched his car. Because the totality of the circumstances provided probable cause for the search of Simpson's car under the automobile exception to the search warrant requirement, we reverse.

Three police officers, including Officer Michael Collazo, were patrolling an area in Orlando known for narcotics and firearms transactions. They first saw Simpson standing outside his car at a gas station with another man. The car had dark tinted windows. At least two times, the officers watched Simpson and the other man open the car's doors, reach inside to take something out, and then walk into the gas station convenience mart. But the officers could not see what Simpson retrieved because of the dark window tinting.

Based on the suspected tint violation, Officer Collazo called another unit to assist in a traffic stop. Simpson left the gas station, and the other unit stopped Simpson to check the tint. Simpson, who was the car's only occupant, opened his door and said the driver's side window did not lower. He then lowered the passenger side windows to allow police to test the tint.

By that time, Officer Collazo's unit had arrived. After Officer Collazo approached the passenger side, he alerted his colleagues that he smelled fresh cannabis "on the cross breeze" formed by Simpson's open driver's-side door and passenger-side window. Officer Collazo said that he recognized the smell from ten years of law enforcement experience, during which he encountered different narcotics, including cannabis, "[a]lmost daily." The officers then removed Simpson from the car and handcuffed him, explaining to him that Officer Collazo had smelled cannabis.

During this exchange, Officer Collazo was searching the car. He found a handgun in the car's center console. Another officer opened a backpack on the car's passenger seat. Inside the backpack, the officer found about four ounces of cannabis in an opened vacuum-sealable bag. The backpack also contained dimethylpentylone and cocaine.

The State charged Simpson with trafficking in ten grams or more of dimethylpentylone and possession of a firearm by a convicted felon. Simpson moved to suppress the seized drugs and gun, arguing law enforcement had no probable cause to stop him or search his car.

At the ensuing evidentiary hearing, four officers involved with Simpson's surveillance, stop, vehicle search, and arrest, including Officer Collazo, testified. Three officers explained they had patrolled the area where Simpson was stopped for years, and they described it as "unique" because it is well-known for illegal narcotics activity. Officer Collazo testified not only that it was a "high-crime area," but specifically "that [officers] make numerous arrests for narcotics" there. Another officer said that when he patrolled the area, he responded to "quite a bit" of calls for service based on narcotics, violent crimes, robberies, and thefts. A third officer, currently assigned to a drug and overdose investigative unit, and who has participated in over 500 narcotics crimes investigations, stated that the area had a

3

high crime designation "due to the influx of calls . . . usually in relevance [sic] to drug activity."

Officer Collazo testified that cannabis, hemp, and medical marijuana smelled the same. He agreed that he smelled fresh—not burnt—cannabis in the car. He conceded he had no concerns about Simpson's sobriety, and that law enforcement had not conducted a driving under the influence investigation.

Simpson argued that because law enforcement could not distinguish between the smell of fresh hemp or medical marijuana—both of which are legal in Florida—and cannabis, they had no probable cause to search his car. He distinguished this smell from burnt cannabis, which he acknowledged might show a person was driving under the influence.

The State responded that the probable cause standard did not require the officers to know for sure that they smelled cannabis before searching Simpson's car. The State reasoned that, under existing case law, the smell of cannabis alone justified the search, even following the legalization of hemp and medical marijuana. It also argued that law enforcement stopped Simpson in a high-crime area known for narcotics transactions, and the trial court should also take this fact into account in deciding whether probable cause for the search existed.

The trial court granted Simpson's motion to suppress, making several detailed factual and legal findings salient to this appeal.[1]  It found the events took place in a high-crime area, but none of Simpson's conduct that law enforcement observed before the stop revealed criminal activity.  While the trial court acknowledged testimony that Simpson had been retrieving unknown items from his car and entering the gas station convenience store, it credited Officer Collazo's testimony that he did not know what the items were or what Simpson was doing with them.  The trial court concluded that Simpson's presence in a high-crime area, standing alone, did not provide a basis for law enforcement to stop him and search his car.

The trial court thus isolated the basis for law enforcement searching Simpson's car to Officer Collazo smelling fresh cannabis inside it.  It found Officer Collazo credible when he testified that he smelled fresh cannabis.  It also credited Officer Collazo's testimony that cannabis smells the same as hemp and medical marijuana.  The trial court then applied a totality of the circumstances test and determined probable cause did not exist to search Simpson's car based solely on the smell of fresh cannabis.

In reviewing the trial court's ruling, we apply a mixed standard.  *See Connor v. State*, 803 So. 2d 598, 605 (Fla. 2001).  Respecting the trial court's superior

---

[1] The trial court concluded that probable cause existed for police to stop Simpson for a window tint violation, and Simpson neither contests this ruling nor the legal standard the trial court applied to make it.

vantage point to evaluate witness credibility and resolve evidentiary conflicts, we defer to its factual findings. *See id.* at 607. We thus review those findings for competent, substantial evidence. *See id.* The trial court's suppression ruling comes to us clothed with a presumption of correctness, and we must interpret the evidence and reasonable inferences arising from it in a manner most favorable to sustaining the ruling. *See McNamara v. State*, 357 So. 2d 410, 412 (Fla. 1978). We have, however, an independent obligation to evaluate the trial court's legal conclusions, including its conclusion that law enforcement lacked probable cause to search Simpson's car. *See Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002); *State v. Hickman*, 363 So. 3d 217, 219 (Fla. 6th DCA 2023). We review these conclusions de novo. *See Pagan*, 830 So. 2d at 806; *Hickman*, 363 So. 3d at 219.

While the parties largely focus their appellate arguments on whether the smell of fresh cannabis alone provides probable cause to search a properly stopped car, this is not a "smell alone" case. Rather, we must determine whether the smell of cannabis, along with the officers' testimony about their experience in the area of town where Simpson's car was searched, established probable cause. We conclude that it did and reverse.

A reasonable search generally involves a warrant. *See Riley v. California*, 573 U.S. 373, 382 (2014). The "automobile exception," however, stands apart from this general requirement, allowing police to conduct a warrantless search of a vehicle in

6

reasonable circumstances. *See California v. Acevedo*, 500 U.S. 565, 569 (1991); *State v. Betz*, 815 So. 2d 627, 631–32 (Fla. 2002). The reasonability of a search grounded in the automobile exception turns on whether probable cause existed for the search. *See Acevedo*, 500 U.S. at 569; *Betz*, 815 So. 2d at 631–32. The automobile exception arises from a century-old case, *Carroll v. United States*, 267 U.S. 132, 160 (1925), which Florida has expressly adopted. *See* § 933.19, Fla. Stat. (1927). The *Carroll* Court described a flexible test anchored in the facts and circumstances within law enforcement's knowledge and reasonable belief that the searched vehicle was carrying contraband or evidence of a crime. *Carroll*, 267 U.S. at 162. This included the geographic area in which the search occurred. *Id*. at 159–60 (citing *The Apollon*, 22 U.S. 362, 374 (1824)).

Under the automobile exception, probable cause exists where, based on the available facts, a person of reasonable caution would believe "that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). Both the United States Supreme Court and the Florida Supreme Court have stated that law enforcement officers "may draw inferences based on [their] own experience[s] in deciding whether probable cause exists.'" *State v. Hankerson*, 65 So. 3d 502, 506 (Fla. 2011) (quoting *Ornelas v. United States,* 517 U.S. 690, 700 (1996)). And the officers are not required "to rule out a suspect's innocent explanation for suspicious

7

facts." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 61 (2018); *see Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983) ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands."). This includes "inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Hatcher v. State*, 342 So. 3d 807, 810 (Fla. 1st DCA 2022) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Thus, we must not "dismiss outright any circumstances that were 'susceptible of innocent explanation.'" *See Wesby*, 583 U.S. at 61 (quoting *Arvizu*, 534 U.S. at 277).

Probable cause also does not present "a high bar"; it is a "practical and common-sensical standard." *See Kaley v. United States*, 571 U.S. 320, 338 (2014); *Harris*, 568 U.S. at 244. It "does not deal with hard certainties, but with probabilities." *Brown*, 460 U.S. at 742 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)); *see Gates*, 462 U.S. at 235 ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision."). Thus, the probable cause standard "does not demand any showing" that an officer's reasonable belief that a search may reveal evidence of a crime "be correct or more likely true than false." *Brown*, 460 U.S. at 742. Instead, it only requires "the kind of 'fair probability' on which 'reasonable

8

and prudent [people,] not legal technicians, act.'" *Harris*, 568 U.S. at 244 (alteration in original) (quoting *Gates*, 462 U.S. at 238, 231).

Finally, probable cause is an objective measure that is not based on the subjective intentions of the officers involved. *See Hickman*, 363 So. 3d at 219 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")). Courts instead assess the totality of the circumstances in determining whether the State has met the probable cause standard. *See Harris*, 568 U.S. at 244 ("We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach."). Courts must therefore consider "the whole picture," rather than reviewing individual facts in isolation. *See Wesby*, 583 U.S. at 61 (quoting *Cortez*, 449 U.S. at 417).

For decades, the smell of cannabis alone has provided law enforcement with probable cause to conduct warrantless searches under the automobile exception. *See, e.g.*, *United States v. Johns*, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of [fresh] marihuana, they had probable cause to believe that the vehicles contained contraband." (citing *Carroll*, 267 U.S. at 149)); *Betz*, 815 So. 2d at 633 ("As the odor of previously burnt marijuana certainly warranted a belief that an offense had been committed, this unquestionably provided the police officers on the scene probable cause to search the passenger compartment

9

of the respondent's vehicle." (citing *United States v. Ross*, 456 U.S. 798, 825 (1982) (applying automobile exception))); *Comparato v. State*, 419 So. 2d 1131, 1133 (Fla. 1st DCA 1982) (valid search of car under automobile exception following smell of cannabis).  Our sister court has recently determined, though, that smell alone is no longer sufficient to establish probable cause because of the nationwide legalization of hemp and Florida's legalization of medical marijuana.  *See Baxter v. State*, 389 So. 3d 803, 810–11 (Fla. 5th DCA 2024) (en banc), *certifying conflict with Owens v. State*, 317 So. 3d 1218 (Fla. 2d DCA 2021); *see also Ford v. State*, 400 So. 3d 838, 843–44 (Fla. 5th DCA 2025).

We have no occasion to address that issue, however, because this case does not involve smell alone.  The totality of the circumstances showed that the officers who stopped Simpson's car had specialized training and extensive experience in narcotics investigations in the area where the lawful stop occurred.  *See generally Harris*, 568 U.S. at 244.  They testified that the area was unique and well-known for narcotics crimes.  And when Simpson opened the driver's side door and rolled down the window, Officer Collazo immediately smelled fresh marijuana.[2]  When assessing

---

[2] The State made no argument related to Simpson's behavior at the gas station. Because the State did not discuss or analyze those facts, we take no position on whether they could have been relevant to an objective probable cause analysis, which does not consider the subjective intentions or beliefs of the officers involved. *See Hickman*, 363 So. 3d at 219; *see also B.T. v. Dep't of Child. & Fams.*, 300 So. 3d 1273, 1279 (Fla. 1st DCA 2020) ("When points, positions, facts and supporting authorities are omitted from the brief, [we are] entitled to believe that such are

10

the probability that this may have been illegal marijuana in the context of the number of narcotics crimes in this area, we believe the State demonstrated probable cause to search Simpson's car.[3]  *See, e.g.*, *P.L.R. v. State*, 455 So. 2d 363, 366 (Fla. 1984) (finding probable cause where officer observed manila envelope that is usually used for narcotic transaction in defendant's pocket while making narcotics arrest of another person at narcotics transaction site); *Cross v. State*, 560 So. 2d 228, 231 (Fla. 1990) (holding under totality of circumstances, officers' combined twenty years in narcotic work provided the "something more" needed to establish probable cause); *State v. Zachery*, 255 So. 3d 957, 962 (Fla. 2d DCA 2018) (finding officer had probable cause to arrest defendant and seize what appeared to be spice joints where officer had been patrolling high-crime area for three years, made hundreds of spice-related arrests in area, and believed from experience joints were illegal).

---

waived, abandoned, or deemed by counsel to be unworthy." (quoting *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983))).

[3] We agree with the trial court that Simpson's presence in a high-crime area, standing alone, would not provide a basis for law enforcement to stop him and search his car.  *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[P]resence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."); *see also Lester v. State*, 754 So. 2d 746, 748 (Fla. 1st DCA 2000) (noting that while law enforcement "need not ignore the character of a neighborhood," defendant's mere presence in high crime area did not meet "requisite standard of probable cause" (quoting *M.A.H. v. State*, 559 So. 2d 407, 408–09 (Fla. 1st DCA 1990))). But this case involves "something more" than Simpson's mere presence in a high-crime area.  *See Cross v. State*, 560 So. 2d 228, 231 (Fla. 1990).

11

In an area well-known for illegal narcotics activity and drug transactions, Simpson drove a car that smelled like drugs. While the police did not learn this determinative fact before they stopped him, they discovered it before they commenced their search. In cabining the impact of Simpson's activities in a high-crime area to his actions in the convenience store parking lot, the trial court did not consider the totality of the circumstances in making its probable cause determination. For these reasons, we reverse the trial court's order granting Simpson's motion to suppress and remand this case for further proceedings.

REVERSED and REMANDED.

TRAVER, C.J. and BROWNLEE, J., concur.
WHITE, J., concurs in result only, without opinion.


James Uthmeier, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellant.

Michelle Yard, of Joshi Law Firm, P.A., Orlando, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED