910 So.2d 333 (2005)
STATE of Florida, Appellant,
v.
Ronald LAVERONI, Appellee.
No. 4D04-2443.
District Court of Appeal of Florida, Fourth District.
September 14, 2005.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellant.
Michele A. Lucas of the Law Offices of McDermott & Lucas, P.A., Daytona Beach, for appellee.
*334 KLEIN, J.
The state appeals an order granting defendant's motion to suppress drugs found in a car after a narcotics detection dog indicated the presence of drugs. We reverse the order, which was based on the failure of the state to prove the reliability of the dog under Matheson v. State, 870 So.2d 8 (Fla. 2d DCA 2003), because that issue was not raised in the motion to suppress, and certify conflict with Matheson.
A citizen informed a detective, with whom she was acquainted, that the defendant would be selling narcotics at a certain bar between 8:00 p.m. and 10:00 p.m. on a particular night, and described him, his vehicle, the Tennessee license tag, and a name plate on the front of the car. The detective observed the car arrive and saw the defendant enter the bar and quickly leave. As the defendant drove away he almost caused an accident with another car, which had to swerve to avoid him, and the detective called for another officer to assist him in stopping defendant because of the reckless driving he had observed. Defendant was then stopped, and after he refused to allow the detective to search his car, the detective requested another officer to bring a narcotics dog. The officer and the dog arrived while the detective was still writing the citation, and drugs were found in a search of the car after the dog alerted at the open driver's window.
The only argument advanced by defendant at the hearing on the motion to suppress was that there had been an unreasonable delay between the stop and the arrival of the narcotics dog; however, the evidence did not support that theory and the court did not suppress on that ground. The court, on its own, after the parties rested, raised the issue of whether there was sufficient proof that the narcotics dog was qualified so as to establish probable cause under Matheson v. State, 870 So.2d 8 (Fla. 2d DCA 2003). In Matheson, the court held that proof that a narcotics dog has been trained and certified is insufficient in and of itself to establish probable cause based on a dog alert, explaining:
[W]e conclude that the fact that a dog has been trained and certified, standing alone, is insufficient to give officers probable cause to search based on the dog's alert. One Florida case has recited additional factors that must be known in order to conclude that an alert by a narcotics detection dog is sufficiently "reliable" to furnish probable cause to search. In State v. Foster, 390 So.2d 469 (Fla. 3d DCA 1980), the Third District identified these factors as
the exact training the detector dog has received; the standards or criteria employed in selecting dogs for marijuana detection training; the standards the dog was required to meet to successfully complete his training program; the "track record" of the dog up until the search (emphasis must be placed on the amount of false alerts or mistakes the dog has furnished).

Foster, 390 So.2d at 470 (quoting Hansen, 13 San Diego L.Rev. at 417). We agree with this list of factors, and we especially join in the Foster court's emphasis on the dog's performance history. A dog's alert can give an officer probable cause to search only if the officer reasonably believes that the dog would not exhibit the alert behavior unless contraband was present. Given the "language barrier" between humans and caninesthus, for example, preventing the officer from questioning the dog further for corroborative details, as he might a human informantthe most telling indicator of what the dog's behavior means is the dog's past performance in the field. Here, the State did not present *335 any evidence of Razor's track record. Accordingly, we conclude that the State did not meet its burden to establish that the deputies had probable cause to search Matheson's car.
870 So.2d at 14-15.
After mentioning the Matheson case at the suppression hearing, the court noted that there was no testimony as to the qualifications of the dog. At this point, the state asked the court to permit it to call witnesses to testify as to the qualifications of the dog, but the court refused and granted the motion to suppress.
Under Florida Rule of Criminal Procedure 3.190(h)(2), a motion to suppress evidence "shall state clearly the particular evidence sought to be suppressed, the reasons for suppression, and a general statement of the facts on which the motion is based." Neither the motion to suppress, nor the argument presented by defendant at the evidentiary hearing, raised the qualifications of the narcotics dog. Because the state was not on notice that this was an issue until the court raised it, the court should have granted the state's request to call witnesses to qualify the dog. State v. Ellis, 491 So.2d 1296 (Fla. 3d DCA 1986) (reversing trial court order denying state's motion to reopen suppression hearing); Donaldson v. State, 722 So.2d 177 (Fla. 1998) (citing Ellis). We accordingly reverse, and, because the issue may come up on remand, explain why we disagree with Matheson.
Where, as in this case, there was no warrant for the search, the burden is on the state in a suppression hearing to show probable cause. Doctor v. State, 596 So.2d 442 (Fla.1992). Our review of cases from around the country indicates that Matheson, which held that the state must establish the reliability of the dog through performance records in order to show probable cause, is out of the mainstream. In Foster, which was quoted in Matheson, it was unnecessary for the third district to address that issue. A different view, which also appears to be out of the mainstream, is that if a narcotics dog has been properly trained and certified, the dog's reliability is established, and the dog's past performance records are not relevant or even discoverable by the defendant. State v. Nguyen, 157 Ohio App.3d 482, 811 N.E.2d 1180 (2004).
Although we do not agree with the holding of Matheson, Judge Northcutt's opinion in Matheson does persuade us that, because these dogs are not always correct, their past performance records are relevant. See also United States v. Kennedy, 131 F.3d 1371, 1378 (10th Cir. 1997) (describing a dog that has a 71% accuracy rate); United States v. Scarborough, 128 F.3d 1373, 1378, n. 3 (10th Cir. 1997) (describing a dog that erroneously alerted 4 times out of 19 while working for the postal services and 8% of the time over its entire career); United States v. Limares, 269 F.3d 794, 797 (7th Cir.2001) (accepting as reliable a dog that gave false positives between 7 and 38% of the time); United States v. $242,484.00, 351 F.3d 499, 511 (11th Cir.2003) (noting that because as much as 80% of all currency in circulation contains drug residue, a dog alert "is of little value").
Several federal appellate courts, including the Eleventh Circuit, have held that training and certification of a dog, without more, is sufficient proof of the reliability of the dog in order to make a prima facie showing of probable cause. U.S. v. Sentovich, 677 F.2d 834 (11th Cir.1982) (evidence dog trained in drug detection enough to establish reliability); U.S. v. Robinson, 390 F.3d 853 (6th Cir.2004) (positive indication by dog certified as drug detection canine establishes probable *336 cause, all other evidence goes to credibility); U.S. v. Souza, 223 F.3d 1197 (10th Cir.2000) (certified narcotics dog's alert to box which is sufficient for probable cause); United States v. Williams, 69 F.3d 27 (5th Cir.1995) (dog alert to luggage, without more, gives probable cause for arrest).
In United States v. Diaz, 25 F.3d 392, 394 (6th Cir.1994), the court held that training and certification was sufficient but that evidence of the reliability of the dog's performance was admissible, explaining:
When the evidence presented, whether testimony from the dog's trainer or records of the dog's training, establishes that the dog is generally certified as a drug detection dog, any other evidence, including the testimony of other experts, that may detract from the reliability of the dog's performance properly goes to the "credibility" of the dog. Lack of additional evidence, such as documentation of the exact course of training, similarly would affect the dog's reliability. As with the admissibility of evidence generally, the admissibility of evidence regarding a dog's training and reliability is committed to the trial court's sound discretion.
Applying the above language from Diaz, the Georgia Court of Appeal in Dawson v. State, 238 Ga.App. 263, 518 S.E.2d 477 (1999), concluded that evidence of certification as a narcotics detection dog constitutes prima facie evidence of reliability, but that this can be challenged by the defendant with proof of the failure rate of the dog, or other evidence, with the ultimate determination to be made by the trial court. We agree with Dawson.
We therefore conclude that the state can make a prima facie showing of probable cause based on a narcotic dog's alert by demonstrating that the dog has been properly trained and certified. If the defendant wishes to challenge the reliability of the dog, he can do so by using the performance records of the dog, or other evidence, such as expert testimony. Dawson; Diaz. Whether probable cause has been established will then be resolved by the trial court.
We reverse for further proceedings consistent with this opinion and certify direct conflict with Matheson.
FARMER and GROSS, JJ., concur.