CANADY, Judge.
Gaynor Earl Tedder, Jr., appeals from his convictions and sentences for armed home invasion robbery and five counts of armed kidnapping, arguing that the trial court should have granted his motion to suppress. Without further comment, we affirm the trial court’s ruling that certain *1053 statements made by Tedder after his arrest should not be suppressed. We hold that the trial court correctly denied Ted-der’s motion to the extent that it sought to suppress certain statements Tedder made to officers before a canine alert on his vehicle. We conclude, however, that because the State did not prove that a canine alert provided probable cause for a search of Tedder’s vehicle, the trial court should have suppressed all the evidence obtained as a result of that search.
I. Background,
On March 25, 2003, Sergeant James Creghan was on patrol in Fort Myers at approximately 8:45 a.m. when he saw a white pick-up truck parked in a dark area behind a 24-hour Mobil gas station. Cre-ghan pulled up near the truck and saw Tedder and Michael Varnum. When Cre-ghan parked his vehicle and got out, Ted-der was standing by the truck and Varnum was walking toward a pay phone. Cre-ghan asked Tedder, “what’s up.” Tedder responded that they were in the Fort Myers area because Varnum had a job setting tile. Creghan then looked in the open bed of the truck, where he saw a fishing pole and an opaque Tupperware container. Finding Tedder’s explanation suspicious because he did not see any tile-setting tools in the open bed of the truck, Creghan requested identification from both Tedder and Varnum. Both provided driver’s licenses showing addresses in Panama City. Creghan called in a warrants check using a portable radio he carried on his person. While Creghan was running the warrants check, two back-up officers arrived.
After the warrants check on both Ted-der and Varnum came back clear, Creghan asked the back-up officers to complete “Field Interrogation Cards” on the two men, due to a history of burglaries in the area. Tedder and Varnum were interviewed separately over a period of from 20 to 30 minutes. During the course of their interviews, Tedder gave an explanation of their journey from Panama City to Fort Myers that was inconsistent with Var-num’s explanation. While these interviews were being conducted, the officers retained possession of the driver’s licenses.
As the officers were completing the field interrogation cards, a canine officer arrived at the scene with his narcotics detection dog, Rex. Creghan instructed the canine officer to walk Rex around Tedder’s truck. During that walk, Rex alerted to the passenger door. Although the ensuing search of Tedder’s truck did not reveal any illegal drugs, it did reveal duct tape, masks, and other items that connected Tedder to a home invasion robbery that had occurred two weeks earlier several blocks from the Mobil station. Tedder was then arrested and subsequently charged with one count of armed home invasion robbery and five counts of armed kidnapping.
Tedder filed a motion to suppress the evidence obtained as a result of the search of his truck, arguing that Rex’s alert was insufficient to provide probable cause for a search of the truck. At the hearing on the motion, the canine officer, Officer Short, testified that Rex was certified as both a patrol dog and a narcotics detection dog. Short testified that he and Rex had attended a 400-hour basic academy course for patrol work and a 400-hour narcotics detection course. Rex was certified in narcotics detection by the National Police Canine Association, and he had been re-certified every year for the past six years. Rex had also undergone in-service training, including three 40-hour seminars and various workshops with Short. In March 2003, at the time of this incident, Rex was trained to detect methamphetamine, LSD, *1054 heroin, all forms of cocaine, and all forms of marijuana.
Short testified that narcotics detection dogs are selected based on their “very high drive, willingness to work, fetch, retrieve, drop.” He also testified that Rex was very successful during his training and that he had found Rex to be very reliable. However, Short testified that no records were kept concerning how accurate Rex had been at detecting narcotics in the field and that Short did not keep track of this himself. Short also denied that Rex had ever made a false alert because, in Short’s opinion, the failure to find narcotics after an alert does not constitute a false alert. Instead, according to Short, it means that narcotics that were once there had simply been removed. Because of this asserted lack of false alerts, Rex had never undergone any remedial training due to false alerts in the field.
After considering this testimony, the trial court found that Rex was trained and certified and had continued his training as required to maintain his certification. The trial court also found that Officer Short’s testimony was very credible. Based on these findings, the trial court concluded that Rex’s alert on Tedder’s truck was sufficient to provide probable cause for the search of the truck. Thus, the trial court denied Tedder’s motion. On appeal, Ted-der contends that the trial court’s findings were insufficient to establish that there was probable cause for the search.
II. The Probable Cause Issue
Our resolution of this case is dictated by this court’s decision in Matheson v. State, 870 So.2d 8 (Fla. 2d DCA 2003). In Matheson, this court held that the certification of a narcotics detection dog, standing alone, is insufficient to establish that the dog is reliable so as to allow the dog’s alerts to constitute probable cause for a search. Id. at 14. Instead, this court held that the trial court must consider other factors, including
“the exact training the detector dog has received; the standards or criteria employed in selecting dogs for marijuana detection training; the standards the dog was required to meet to successfully complete his training program; the ‘track record’ of the dog up until the search (emphasis must be placed on the amount of false alerts or mistakes the dog has furnished).”
Id. (quoting State v. Foster, 390 So.2d 469, 470 (Fla. 3d DCA 1980)). This court noted that particular emphasis must be placed on the dog’s performance history or “track record.” Id. at 15. We also held that the burden is on the State to present evidence on each of these factors to show that the search was justified by probable cause. Id. at 12.
Moreover, in Matheson, this court specifically rejected the position that an alert followed by a search in which no drugs are found is not a “false alert.” Id. at 13. In doing so, we stated:
[ I]n this case Razor’s trainer acknowledged the tendency of narcotics detection dogs to alert on the residual odors of drugs that are no longer present.
This underscores one of three central reasons why the fact that a dog has been trained, standing alone, is not enough to give an officer probable cause to search based on the dog’s alert. Razor’s trainer acknowledged that a trained dog, doing what he has been conditioned to do, imparts to the officer merely that he detects the odor of contraband. To be sure, as the trainer maintained, this may not be a false alert when assessing the success of the dog’s conditioning. But for Fourth Amendment purposes it is neither false nor positive. The presence of a drug’s odor at an intensity detectable by the dog, but not by the officer, *1055 does not mean that the drug itself is present. An officer who knows only that his dog is trained and certified, and who has no other information, at most can only suspect that a search based on the dog’s alert will yield contraband. Of course, mere suspicion cannot justify a search.

Id.

The State presented no evidence of Rex’s “track record,” including the number of false alerts or mistakes Rex had made in the field. The State’s failure to present any evidence on this factor that the trial court is specifically required to consider under Matheson resulted in the State’s failing to meet its burden to prove that Rex’s alert provided the officers with the probable cause necessary to support the search. Thus, the trial court should have granted Tedder’s motion to suppress the evidence obtained as a result of the search of Tedder’s truck.
We acknowledge that the reasoning of Matheson, which we follow here, has been rejected by two other district courts. Both State v. Coleman, 911 So.2d 259 (Fla. 5th DCA 2005), and State v. Laveroni, 910 So.2d 333 (Fla. 4th DCA 2005), reject Matheson’s, 870 So.2d at 15, requirement that the State adduce evidence establishing “the dog’s performance history” to meet the State’s burden of proof. As we recently did in Gibson v. State, 968 So.2d 631 (Fla. 2d DCA 2007), we certify direct conflict with Coleman and Laveroni.
III. The Illegal Detention Issue
Tedder’s contention that he was illegally detained after the warrants check came back clear — in particular, his contention that retention of his license by the officer necessarily resulted in a detention — is rejected. The officer’s retention of Tedder’s driver’s license after the completion of the warrants check is not dispos-itive. The trial court found that “there was no indicia of coercion present from the time of [Tedder’s] initial contact with law enforcement officials through the time when the K-9 unit alerted on his vehicle .... ” The court specifically determined “that law enforcement officials did not use their emergency lights or sirens, display their badges, remove their guns from their holsters, handcuff or physically restrain [Tedder], issue verbal commands[,] or otherwise speak in a tone of voice that would indicate that compliance was mandatory.” There is no indication in the record that Tedder at any point manifested an unwillingness to cooperate or ever attempted to terminate the encounter. Based on the totality of circumstances, the retention of Tedder’s driver’s license after the warrants check did not in itself transform the encounter into a detention. The trial court was correct in denying suppression of Ted-der’s statements made prior to the time when the narcotics detection dog alerted on Tedder’s vehicle.
Although the retention of a suspect’s driver’s license obtained in the course of a consensual encounter is a circumstance that may point to the conclusion that the encounter lost its consensual character, the failure of an officer to return a driver’s license to a suspect instantly after the conclusion of a warrants check does not in itself establish that the suspect was detained. The significance of the retention of a driver’s license must be evaluated in the context of the totality of the circumstances. See Golphin v. State, 945 So.2d 1174 (Fla.2006); see also Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).
In the absence of any signs of coercion, the officer’s retention of Tedder’s driver’s license while asking additional questions and completing a field interrogation card did not in itself transform the consensual *1056 encounter into a detention. Here, there is no evidence that the officers “effectively foreclos[ed] [Tedder’s] ability to request the return of his identification so that he could proceed on his way,” Golphin, 945 So.2d at 1188, or that “the circumstances of the encounter [otherwise became] so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave,” Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).
IV. Conclusion
In sum, we conclude that the trial court erred in not suppressing the evidence obtained as a result of the search of Tedder’s truck but was correct in not suppressing the postarrest and presearch statements at issue. Because the trial court erred in failing to suppress the evidence obtained as a result of the search of Tedder’s truck, we reverse Tedder’s convictions and sentences.
Reversed and remanded for further proceedings; conflict certified.
WHATLEY, J., Concurs in part and concurs in result.
STRINGER, J., Concurs in part and dissents in part.