GROSS, C.J.
Andre Frost appeals the circuit court’s denial of his dispositive motion to suppress in a case where he entered pleas of no contest to charges involving possession of cocaine and cannabis. Frost contends that the state failed to establish the reliability of the police dog that alerted to the presence of drugs in his car. We find that competent, substantial evidence supported the circuit court’s finding of probable cause based on the dog sniff, and affirm.
Deputy Paul Jackson stopped Frost’s Dodge Neon for running a stop sign. Corporal Randy Thomas arrived at the scene after the traffic stop. Jackson approached Frost’s car and spoke with Frost. The deputy asked if he could search the car, but Frost said no. Thomas called for a dog unit.
While Jackson was writing a traffic citation, Detective Richard Voss arrived at the scene with his dog, Rex. Voss walked Rex around Frost’s car for the dog to perform an exterior sniff. Rex alerted at the driver’s seat. Voss returned Rex to his patrol car and told Jackson and Thomas about the alert. Jackson finished writing the citation and issued it to Frost.
After Frost was removed from his car, Thomas and Voss searched it. The search turned up powder and crack cocaine in an Altoids can found between the driver’s seat and center console. A bag with marijuana was found in the same area. The deputies placed Frost under arrest.
Detective Voss described Rex’s training and experience. The two had been a team for six or seven years. Rex was a dual purpose K-9, which means that he was an apprehension dog in addition to serving as a narcotics detection dog. The Okeechobee Sheriffs Office obtained Rex from Metro-Dade K-9 Services in Hialeah. K-9 Services had trained Rex for narcotics and apprehension work. This initial training was the basic training Rex needed to be a police dog. A police dog’s handler then conducts proficiency training throughout the dog’s career.
Voss explained that he relied on Rex’s alerts to provide probable cause for searches. He testified that Rex was certified to detect marijuana, cocaine, hash, heroin, ecstasy, and methamphetamine. Rex was certified in narcotics and apprehension work by the National Detection Dog Association, the North American Police Work Dog Association, and the Florida Police Work Dog Association. Voss tried to maintain the dog’s certifications each year, depending on the location where the certification evaluations were held. Over the time that Voss and Rex worked together, they obtained between 50 and 80 certificates. In addition to that training, Voss trained Rex once a week or every other week in a controlled odor environment. The sheriffs office maintained records for Rex’s certifications and training.
On cross-examination, Voss stated that Rex had failed one test. During that 2007 test, methamphetamine was placed in a car. Rex was able to recognize the odor and identify the car, but not the source of *1122 the odor within the car, “because of the depth of the hide.” This one failed test was but one portion of an overall certification evaluation.
Voss also described instances where Rex alerted to the odor of drugs in a car but a subsequent search located no drugs. Voss estimated these false positives, or alerts to residual odor, occurred in less than 5% of the hundreds of times Rex had been used. He added that, in such cases, he often questioned the driver of the car and determined that drugs had at one time been used in the car. Voss did not calculate an overall accuracy rate for Rex and he did not know of any agency that did so for its dogs.
Frost argued that Rex’s alert, by itself, did not provide probable cause for the search of the car. The trial court denied the motion to suppress, relying on State v. Laveroni, 910 So.2d 333 (Fla. 4th DCA 2005).
Two lines of cases address the sufficiency of a police dog’s reliability to provide probable cause for a warrantless search. Frost relies on the first line of cases, which began with Matheson v. State, 870 So.2d 8 (Fla. 2d DCA 2003), review dismissed, 896 So.2d 748 (Fla.2005), cert. denied, 546 U.S. 998, 126 S.Ct. 545, 163 L.Ed.2d 499 (2005). In Matheson, the Second District held that a dog’s alert to the presence of drugs may provide probable cause, but not by itself; proof that a narcotic dog has been trained and certified is insufficient in and of itself to establish probable cause for a search. Id. at 12, 14. The State must also demonstrate that “an alert by a narcotics detection dog is sufficiently ‘reliable’ to furnish probable cause to search.” Id. at 14. Factors informing reliability are the dog’s training, the standards or criteria used to select dogs for narcotics training, the standards the dog had to meet to complete training, and the dog’s performance history. Id. The Second District placed particular emphasis on the dog’s performance history. Id. at 15.
No other district has followed Matheson. See State v. Tanner, 915 So.2d 762 (Fla. 2d DCA 2005); Gibson v. State, 968 So.2d 631 (Fla. 2d DCA 2007), review dismissed, 985 So.2d 1088 (Fla.2008); Tedder v. State, 18 So.3d 1052 (Fla. 2d DCA 2008); State v. McNeal, 35 Fla. L. Weekly D1261, — So.3d — (Fla. 2d DCA June 4, 2010).
The state urges us to rely on the second line of cases, beginning with our decision in State v. Laveroni, which reversed a circuit court’s grant of a motion to suppress. There, the defendant’s written motion argued that drug evidence should be suppressed because of the unreasonably long length of time between a traffic stop and the arrival of the dog. Laveroni, 910 So.2d at 334. At the hearing on the motion, after the presentation of evidence and argument, the circuit court sua sponte raised “the issue of whether there was sufficient proof that the narcotics dog was qualified so as to establish probable cause under Matheson v. State.” Id. Neither party had offered evidence on the issue. Id. at 335. Instead of allowing the state to present more evidence, the court granted the defendant’s motion to suppress. Id. We reversed, holding that the defendant’s motion and argument, which had challenged only the unreasonable delay, did not put the State on notice that the dog’s qualifications would also be challenged. Id.
In Laveroni, we also provided guidance for how the case should be handled on remand, explaining the basis for our disagreement with Matheson. Id. Based on our review of case law, we concluded that Matheson was “out of the mainstream.” Id. Nonetheless, we agreed with the Second District that a dog’s past performance records are relevant to the issue of the *1123 reliability of a dog sniff. We then described the analytical framework to be applied when a defendant challenges the use of a dog sniff to establish probable cause for a search. Id. We wrote
that the state can make a prima facie showing of probable case based on a narcotic dog’s alert by demonstrating that the dog has been properly trained and certified. If the defendant wishes to challenge the reliability of the dog, he can do so by using the performance records of the dog, or other evidence, such as expert testimony. Whether probable cause has been established will then be resolved by the trial court.
Id. at 336 (citations omitted) (following Dawson v. State, 238 Ga.App. 263, 518 S.E.2d 477 (1999)). We certified direct conflict with Matheson. Id.
Laveroni has been followed by the First and Fifth Districts. See Harris v. State, 989 So.2d 1214 (Fla. 1st DCA 2008); State v. Coleman, 911 So.2d 259 (Fla. 5th DCA 2005). The Supreme Court granted review in Harris to resolve the inter-district conflict and held oral argument on June 4, 2009. See Docket, Harris v. State, 989 So.2d 1214. The court has not issued its opinion.
In the absence of a Florida Supreme Court decision resolving the inter-district conflict, the circuit court in this case was bound by Laveroni. See Miller v. State, 980 So.2d 1092, 1094 (Fla. 2d DCA 2008) (“[B]ecause the district courts of appeal in Florida are intended to be courts of final appellate jurisdiction, the opinion of a district court is binding on all trial courts in the state. If there is unresolved conflict between the district courts, the trial court is bound by the precedent in its own appellate district.”) (citations omitted).
Frost argues that Laveroni’s disagreement with Matheson and the articulation of a different rule is dictum and he urges us not follow it. It is true that Laveroni reversed because the circuit court sua sponte raised the dog issue and denied the state’s request to present witnesses to qualify the dog. See 910 So.2d at 334-35. But, although the discussion of probable cause pertaining to a dog sniff in Laveroni is a form of dictum, it is nonetheless authoritative as judicial dictum.
There are two kinds of dicta. On the one hand is obiter dictum, which is “a purely gratuitous observation or remark made in pronouncing an opinion and which concerns some rule, principle or application of law not necessarily involved in the case or essential to its determination.” Bunn v. Bunn, 311 So.2d 387, 389 (Fla. 4th DCA 1975). On the other hand is judicial dictum:
Judicial dicta are comments in a judicial opinion that are unnecessary to the disposition of the case, but involve an issue briefed and argued by the parties. Black’s Law Dictionary 465 (7th ed. 1999). Judicial dicta have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court. Cates v. Cates, 156 Ill.2d 76, 80, 189 Ill.Dec. 14, 619 N.E.2d 715 (1993).
People v. Williams, 204 Ill.2d 191, 273 Ill.Dec. 250, 788 N.E.2d 1126, 1136 (2003).[1] *1124 In particular, “[a]n expression which might otherwise be regarded as dictum becomes an authoritative statement when the court expressly declares it to be a guide for future conduct.” State v. Fahringer, 136 Ariz. 414, 666 P.2d 514, 515 (1983) (citation omitted).
Here, our analysis in Laveroni providing a framework for analyzing a Fourth Amendment challenge to a dog’s sniffing qualifications was judicial dictum. It was unnecessary to the ultimate holding, but the dog issue was briefed by the parties. The analysis was not purely gratuitous; rather, it was to guide the case on remand and for future cases as well. Finally, our pronouncement was not perfunctory, but reflected a considered and deliberate judgment by the court. Therefore, we continue to abide by Laveroni, subject to a different ruling on the issue by the Florida Supreme Court.
Applying Laveroni to this case, we find no error in the ruling of the circuit court. A circuit court’s ruling on a motion to suppress is a mixed question of fact and law. Hines v. State, 737 So.2d 1182, 1184 (Fla. 1st DCA 1999). Factual findings are reviewed for competent, substantial evidence; the application of the law to those facts is reviewed de novo. State v. Gomez, 937 So.2d 828, 831 (Fla. 4th DCA 2006). Because the ruling is presumed correct, the evidence and reasonable inferences and deductions derived from it must be interpreted in a manner most favorable to sustaining the court’s ruling. State v. Allen, 994 So.2d 1192, 1194 (Fla. 5th DCA 2008). A dog’s reliability is a question of fact. See Matheson, 870 So.2d at 12 (quoting Dawson, 518 S.E.2d at 480).
Here, Frost challenged Rex’s reliability. Under Laveroni, to make a prima facie showing of probable cause, the state was required to demonstrate that Rex was properly trained and certified 910 So.2d at 336. The state satisfied this burden by having Detective Voss describe Rex’s certifications and training regimen. Voss testified that Rex was certified to detect marijuana, cocaine, hash, heroin, ecstasy, and methamphetamines. Voss explained that Rex trained more than once a month in a controlled odor environment throughout his six years as a police dog. Consequently, the state made a prima facie showing of Rex’s reliability.
Foster relied on Rex’s performance records to challenge Rex’s reliability. On cross-examination of Voss, Foster elicited testimony that Rex had a 5% false positive rate, so that Rex was accurate 95% of the time. A 95% accuracy rate indicates significant reliability.[2] Competent, substan *1125 tial evidence supported the circuit court’s finding of the dog’s reliability to support a finding of probable cause.

Affirmed.

STEVENSON and TAYLOR, JJ, concur.

. Many jurisdictions recognize the distinction between obiter dicta and judicial dicta. See, e.g., Cerro Metal Prods. v. Marshall, 620 F.2d 964, 978-79 & n. 39 (3d Cir.1980); Ex parte M.D.C., 39 So.3d 1117, 1129 n. 4 (Ala.2009); State v. Widenhouse, 582 So.2d 1374, 1382 (1991); State v. Baby, 404 Md. 220, 946 A.2d 463, 497-98 (2008) (Raker, J., concurring and dissenting); Johnson v. White, 430 Mich. 47, 420 N.W.2d 87, 90 n. 2 (1988); State ex rel. Ahern v. Young, 273 Minn. 240, 141 N.W.2d 15, 19 (1966); Dyer v. Drucker, 104 N.Y.S. 166, 168-69 (N.Y.Sup.Ct.1906); Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764, *1124 773 (Tex.1964); W. Va. Dep’t of Transp., Div. of Highways v. Parkersburg Inn, 222 W.Va. 688, 671 S.E.2d 693, 699-700 & n. 6 (2008); Brown v. Chicago & N.W. Ry. Co., 102 Wis. 137, 78 N.W. 771, 776 (1899). See also 21 C J.S. Courts § 230 (on judicial dicta).

. See United States v. Donnelly, 475 F.3d 946, 955 (8th Cir.2007) (finding a dog reliable when, combined with his certifications and consistent training, "his accuracy rate exceeded [50] percent”); United States v. $30,670, 403 F.3d 448, 460 (7th Cir.2005) (finding a dog reliable when "[d]rugs or currency were found after 97.6% of his alerts,” "[d]rugs were found after 70.1% of his alerts,” and "[o]nIy five of Bax's alerts (the remaining 2.4%) were unambiguous false positives”); United States v. Navarro-Camacho, 186 F.3d 701, 706 (6th Cir.1999) (finding a dog reliable when it had "rate of reliability ... between 90 and 97 percent,” even if it "occasionally alerted falsely”); United States v. Carroll, 537 F.Supp.2d 1290, 1297 (N.D.Ga.2008) (“Even if Azteck's accuracy rate is only 52%, that level of reliability is sufficient for his alert to establish probable cause. Azteck’s alert indicates the presence of drugs by more than a preponderance of the evidence. Azteck’s accuracy exceeds [the] ‘fair probability’ requirement of probable cause.”).