CANADY, C.J.,
dissenting.
Because the majority imposes an eviden-tiary burden on the State which is based on a misconception of the federal constitutional requirement for probable cause, I dissent. I would affirm the decision of the First District Court of Appeal on review; approve State v. Coleman, 911 So.2d 259 (Fla. 5th DCA 2005), and State v. Laveroni, 910 So.2d 333 (Fla. 4th DCA 2005); and disapprove Gibson v. State, 968 So.2d 631 (Fla. 2d DCA 2007), and Matheson v. State, 870 So.2d 8 (Fla. 2d DCA 2003).
In brief, the elaborate and inflexible evi-dentiary requirements the majority adopts are inconsistent with the proper understanding of probable cause as a “ ‘practical, non-technical conception’ that deals with ‘the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.’ ” Maryland v. Pringle, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In its effort to manage the conduct of law enforcement, the majority strays beyond what is necessary to determine if the Fourth Amendment’s proscription of “unreasonable searches and seizures” has been violated. In establishing requirements for determining the lawfulness of a search based on the alert of a drug detection dog, the majority demands a level of certainty that goes beyond what is required by the governing probable cause standard.
The process of determining whether a search was reasonable because it is based on probable cause “does not deal with hard certainties, but with probabilities.” Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. *776 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The probable cause standard “merely requires that the facts available to the officer would ‘warrant a man of reasonable caution in the belief ” that “evidence of a crime” may be found. Id. (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). “[I]t does not demand any showing that such a belief be correct or more likely true than false.” Id. Instead, the probable cause standard requires simply that the search be justified by what the officer reasonably believes to be “reasonably trustworthy information.” Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting Carroll, 267 U.S. at 162, 45 S.Ct. 280). The majority here, however, imposes evidentia-ry requirements which can readily be employed to ensure that the police rely on drug detection dogs only when the dogs are shown to be virtually infallible.
The record shows that the searching officer had an objectively reasonable basis for crediting the dog’s alert. The State presented uncontroverted evidence that Aldo had been trained to detect drugs since January 2004 and certified to detect drugs since February 2004. Officer Wheet-ley testified that he trained Aldo approximately four hours per week, deployed Aldo approximately five times per month, and attended a forty-hour annual training seminar. Wheetley described Aldo’s success rate during training as “really good.” Aldo’s weekly training records reveal that from the November 2005 to June 2006, Aldo performed satisfactorily 100 percent of the time. Harris failed to present any evidence challenging Aldo’s training or certification. Based on this record of historical facts, the majority’s conclusion that the officer acted unconstitutionally is totally unwarranted. See Jones v. Commonwealth, 277 Va. 171, 670 S.E.2d 727, 733 (2009) (“The narcotics detection dog’s reliability can be established from its training and experience, as well as a proven track record of previous alerts to the existence of illegal narcotics. Specific certifications and the results of field testing are not required to establish a sufficient foundation [for the dog’s reliability].”)
Since there was no violation of the Fourth Amendment, the decision of the First District should be affirmed.