DAVIS, Judge.
Brenda Horne challenges her conviction and sentence for possession of carisopro-dol. Horne pleaded guilty to the charge but specifically reserved the right to appeal the denial of her motion to suppress. We reverse.
The charge against Horne arose after a deputy observed her walking on the grass between a house and the road one evening just after midnight. There were no adjacent sidewalks along the roadway, and according to the arresting officer, Horne was walking approximately ten to fifteen feet from the road. The deputy stopped his marked patrol car and initiated contact with Horne, pulling onto the grass at an angle in front of her path. Horne told the deputy that she was walking that far off the road to remain safe from “crazy drivers.” She gave him her driver’s license, and a computer search returned no active warrants. At some point during the encounter, the deputy asked to conduct a search of Horne that would include reaching into her pockets. Horne consented to the search. The deputy does not remember when during the course of the encounter he requested the search, but he did acknowledge that he did not tell Horne that she was free to leave before doing so. The deputy found two carisoprodol pills in the bottom of Horne’s jacket pocket, but Horne claimed that they belonged to a friend who had a prescription for the pills.
In her motion to suppress, Horne argued that the officer’s failure to return her driver’s license after completing the warrants check converted a consensual encounter into a detention and that therefore she could not have freely consented to the search of her person.
At the suppression hearing, Horne testified that she had been returning from a gas station and was fifteen houses away from her own residence at the time of her encounter with the deputy. According to Horne, she was walking only six feet off the road. She also testified that she could not leave at the time the deputy asked to search her because he still had her driver’s license even though he had concluded the identification check prior to asking to search her.
In ruling on the motion to suppress, the trial court found that the deputy had concluded his warrants check prior to the time of the search but was still holding Horne’s identification. However, the court concluded that because Horne initially responded to the officer’s stopping of the patrol car by approaching him, answering his questions, and giving him her license, the encounter was consensual. Accordingly, the trial court denied the motion to suppress, based on the totality of the circumstances test discussed in Golphin v. State, 945 So.2d 1174 (Fla.2006). On appeal, Horne argues that the trial court erred in denying her motion to suppress because her consent to search was not valid. We agree.
This court employs a mixed standard of review when considering a trial court’s order on a motion to suppress. State v. K.S., 28 So.3d 985, 987 (Fla. 2d DCA 2010).
The trial court’s “determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. However, the [trial] court’s determinations on mixed questions of law and fact and its *160 legal conclusions are subject to de novo review.”
Id. (quoting State v. Clark, 986 So.2d 625, 628 (Fla. 2d DCA 2008)).
First we note that there indeed is competent, substantial evidence in the record to support the trial court’s determination that Horne voluntarily gave her license to the officer, and as such, we agree that her initial encounter with the police was consensual. See Popple v. State, 626 So.2d 185, 186 (Fla.1993) (“The first level [of police-citizen encounters] is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them.”).
But because the nature of an encounter may change at any time during its course, see generally Tedder v. State, 18 So.3d 1052, 1055-56 (Fla. 2d DCA 2008), our review must focus on the nature of the encounter at the time of the officer’s request to search. To determine whether Horne was seized at the time of the search, the trial court was required to consider whether, under the totality of the circumstances, a reasonable person in Horne’s position would have thought she was free to leave at the time she consented to the search. See Golphin, 945 So.2d at 1177-80.
In Golphin, the police conducted a warrants check during a voluntary encounter. The check ultimately revealed an outstanding warrant, for which Golphin was arrested. By the time the search was conducted incident to Gophin’s arrest, consent to search or the nature of the encounter was no longer an issue. Id. at 1188 (“It must also be considered that [the][o]fficer ... did not retain Golphin’s identification while seeking consent to search his person or effects.”). Thus the retention of the license during the encounter in Golphin was not a significant factor in determining the voluntary nature of that encounter. The same cannot be said in the instant case.
Here, when the officer initially pulled into Horne’s path, he thought it was suspicious that she was walking so far from the road and suspected that she may have been taking items from cars in a driveway. Horne provided the officer with a reasonable explanation, and her warrants check was clear. At one point during the warrants check, three officers and two patrol cars were at the scene, and during the entire encounter, the officer’s car remained parked between Horne and the path she was taking home. Additionally, once the officer ran the computer check on Horne, he was aware of her home address and that she was standing only fifteen houses from her own residence. But where Golphin resulted in an arrest due to the warrants check, any basis for the encounter with Horne, consensual or otherwise, ended at the conclusion of Horne’s clear warrants check.
The trial court also relied on Tedder, 18 So.3d at 1055, in concluding that the fact that the officer retained Horne’s driver’s license should not weigh heavily on the question of whether Horne was seized at the time she gave consent to search. However, while the plurality opinion in Tedder did determine that “[t]he officer’s retention of Tedder’s driver’s license after the completion of a warrant’s check [wa]s not dispositive” in that case, it set no bright line rule on the weight that should be given to that fact in determining consent. Id. Rather, this court clearly considered that fact as part of its totality of the circumstances analysis. Id.[1]
*161 In Golphin, the Florida Supreme Court approved the Fifth District’s rejection of “what it perceived to be a bright line rule regarding the impact of retaining an individual’s identification,” as well as its reliance instead on a totality of the circumstances analysis. 945 So.2d at 1178. Furthermore, the case law cited by Golphin in discussing the weight that should be given to an officer’s retention of identification when asking for consent to search indicates that the trial court should have heavily factored the retention of the driver’s license into its consideration of Horne’s encounter. See Golphin, 945 So.2d at 1188-89; Barna v. State, 636 So.2d 571, 572 (Fla. 4th DCA 1994) (concluding that an unlawful investigatory stop occurred where police officers told the defendant that they were “investigating” because he was in a parking lot known for criminal activity and where they retained his identification to run a computer check during which time he consented to a search); see also United States v. Jordan, 958 F.2d 1085, 1088 (D.C.Cir.1992) (determining that the officers’ preventing Jordan from exiting the bus terminal parking lot by retaining his driver’s license, combined with the continued retention of his license while asking for permission to search his bag, “pushes his case over the line”); United States v. Glover, 957 F.2d 1004, 1009 (2d Cir.1992) (concluding that a seizure occurred where a government agent requested that defendant go to an office for further questioning without returning his identification or telling him that he was free to leave); see also Perko v. State, 874 So.2d 666, 666-67 (Fla. 4th DCA 2004) (“In the course of a consensual encounter, a sheriffs deputy obtained Perko’s consent to conduct a search of his person after obtaining, but before returning, his driver’s license while another deputy conducted a warrant check. Under these circumstances, consent was obtained after Perko had been effectively seized. Therefore, the search was unlawful and the fruits thereof must be suppressed.” (emphasis added)); cf. Smith v. State, 753 So.2d 713, 717 (Fla. 2d DCA 2000) (Altenbernd, A.C.J., concurring) (“I place considerable importance on the fact that the officer took Mr. Smith’s cigarettes and money away from him and did not ask to perform an oral cavity search until he had possession of this property. Most reasonable people would not feel free to walk away from an officer who had their money.”).
We conclude that the trial court’s factual findings are supported by competent, substantial evidence but that the trial court erred in applying the law to the facts because under our de novo review, it afforded too much weight to the preliminary facts leading up to the warrants check and did not afford enough weight to those additional circumstances central to when the officer was actually requesting Horne’s consent. Under the totality of the instant circumstances, the officer’s asking to search Horne without returning her license outweighs the fact that she initially voluntarily spoke with the officer and consented to the warrants check.[2] When all *162 of the facts as found by the trial court are considered and afforded the appropriate weight under the applicable case law, it was error to conclude that a reasonable person in Horne’s circumstances would think she was free to leave or that she was not detained as a matter of law. Because the trial court erroneously denied the motion to suppress on that basis, we reverse Horne’s conviction and sentence.
Reversed.
WALLACE and BLACK, JJ., Concur.

. The Tedder court was addressing whether the retention of a driver's license is a deten *161 tion such that certain statements made by the defendant during that time should be excluded. 18 So.3d at 1055. We recognize that consideration of the voluntary nature of consent to search given while an officer is holding one’s driver’s license may differ from the voluntariness of any statements made during that same period.

. We note that an additional factor that must be heavily considered is that at the time the officer was seeking consent to search Horne, he did not tell her she was free to leave. Cf. Crist v. State, 98 So.3d 81, 84 (Fla. 2d DCA 2012) (concluding that the State was required to show by clear and convincing evidence that after the issuance of a citation completed the basis for a traffic stop, the defendant freely *162 and voluntarily consented to the search ”[b]e-cause the record establish[ed] that the officer failed to inform [the defendant] that he was free to leave”).