NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

HEATH LANE,                          )
                                     )
            Appellant,               )
                                     )
v.                                   )        Case No. 2D13-2656
                                     )
STATE OF FLORIDA,                    )
                                     )
            Appellee.                )
_____  )

Opinion filed August 22, 2014.

Appeal from the Circuit Court for Polk
County; Catherine L. Combee, Judge,
and Oliver L. Green, Associate Senior
Judge.

Howard L. Dimmig, II, Public Defender,
and Robert D. Rosen, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and C. Suzanne Bechard,
Assistant Attorney General, Tampa,
for Appellee.


NORTHCUTT, Judge.

        Heath Lane appeals following a withheld adjudication for possession of

hydrocodone.  He argues, and we agree, that the circuit court erred in denying his

motion to suppress the contraband.  Accordingly, we reverse.

After completing an unrelated traffic stop, a sheriff's deputy began a consensual encounter with Lane, an eighteen-year-old high school student who was walking along a sidewalk nearby. The deputy turned off the lights on his patrol car and asked to speak with Lane. Lane assented, and he also agreed to show the deputy his identification. He handed his identification card and wallet to the deputy, who set them on the hood of the patrol car. The deputy then asked if he could search Lane for weapons. He later testified that he generally asks to conduct a search "as an officer safety measure . . . when speaking with people in street encounters." Lane permitted the search, during which the deputy felt and then retrieved some loose pills in Lane's pants pocket. Lane said that a friend had given him the pills when he complained of a headache. The four pills were hydrocodone, for which Lane had no prescription.

At the suppression hearing, Lane testified that he did not feel free to leave during the encounter and that he did not recover his identification until after his release from jail. He argued that the consensual encounter became an illegal detention when the deputy asked to search him without first returning his identification and wallet. The circuit court disagreed. In its order denying the motion to suppress, the court correctly noted that law enforcement officers are not required to tell people they are free to leave during consensual encounters. Lane then entered a plea, reserving the dispositive suppression issue for appeal.

The Fourth Amendment requires the police to reasonably suspect wrongdoing before making a warrantless seizure. Golphin v. State, 945 So. 2d 1174, 1180 (Fla. 2006). But not every encounter is a seizure. Id. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a

citizen may we conclude that a seizure has occurred." Id. (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) (internal quotation marks omitted)).  To determine whether a reasonable person would think he or she was free to leave an encounter with police, we consider the totality of the circumstances.  We give deference to the lower court's findings of fact, but we review its legal conclusions de novo.  Golphin, 945 So. 2d at 1182; Horne v. State, 113 So. 3d 158, 159-60 (Fla. 2d DCA 2013).

Both the Florida Supreme Court and the United States Supreme Court have recognized the potential for coercion when an officer retains a person's identification or travel documents while asking for consent to search.  "While a noncompulsory request for an individual's identification has been unlikely to implicate the Fourth Amendment in isolation, the retention of identification during the course of further interrogation or search certainly factors into whether a seizure has occurred." Golphin, 945 So. 2d at 1185 (citing Florida v. Royer, 460 U.S. 491 (1983) (plurality opinion), which found that a consent to search had been negated by a seizure when officers retained a traveler's identification and ticket without informing him that he was free to depart).

Horne involved facts similar to those in this case.  Brenda Horne was walking alongside a road when a deputy stopped his patrol car to speak with her.  113 So. 3d at 159.  Horne voluntarily gave the deputy her driver's license, and the deputy retained the license when he asked for permission to search her.  After Horne submitted to the search, the deputy discovered two pills for which she had no prescription.  In a suppression motion, Horne argued that her consent to the search was obtained during

- 3 -

an illegal detention and that it was, therefore, not freely given. The circuit court denied the motion to suppress, but this court reversed.

In that case, we agreed with the circuit court's conclusion that the initial encounter, when Horne gave the deputy her driver's license, was consensual. Id. at 160. But the dispositive point was the nature of the encounter at the time Horne was asked to consent to the search. Id. ("[T]he nature of an encounter may change at any time during its course."). This court held that the consensual encounter became a detention when the deputy asked for permission to search before first returning Horne's license:

> We conclude that the trial court's factual findings are supported by competent, substantial evidence but that the trial court erred in applying the law to the facts because under our de novo review, it afforded too much weight to the preliminary facts leading up to the warrants check and did not afford enough weight to those additional circumstances central to when the officer was actually requesting Horne's consent. Under the totality of the instant circumstances, the officer's asking to search Horne without returning her license outweighs the fact that she initially voluntarily spoke with the officer and consented to the warrants check. When all of the facts as found by the trial court are considered and afforded the appropriate weight under the applicable case law, it was error to conclude that a reasonable person in Horne's circumstances would think she was free to leave or that she was not detained as a matter of law.

Id. at 161-62 (emphasis added) (footnote omitted).

The same is true in this case, and for the same reasons we conclude that Lane's consent to the search of his person was not shown to be voluntary. See also Brye v. State, 927 So. 2d 78, 82 (Fla. 1st DCA 2006) (holding that when deputy retained defendant's identification after warrants check, "a reasonable person would not have felt that he or she was free to leave" and defendant's subsequent consent to

search was not shown to be voluntary). When reaching this conclusion, we have considered the totality of the circumstances, including Lane's youth, the deputy's retention of Lane's wallet and identification, and the fact that Lane was not told of his right to refuse a search. See Horne, 113 So. 3d at 161 n.2 (explaining that heavy consideration was given to officer's failure to advise that Horne was free to leave instead of consenting to search); cf. State v. Milwood, 430 So. 2d 563, 565 (Fla. 3d DCA 1983) (reversing suppression of evidence and finding voluntary consent when "the defendant's airline ticket and identification were returned to him prior to his giving consent to the search and that, additionally, the defendant was advised of his right to refuse consent").

We reverse and remand with directions to discharge Lane.


VILLANTI and WALLACE, JJ., Concur.